The Sampson Company, Appellee, v. Mandel Brothers, Inc., Appellant.

Gen. No. 46,230.

Opinion filed June 22, 1954. Released for publication July 9, 1954.

Hopkins, Sutter, Halls, De Wolfe & Owen, of Chicago, for appellant; William G. Blood, and Frank B. Sanders, both of Chicago, of counsel.

Berger & Newmark, of Chicago, for appellee; William B. Berger, and Marvin S. Fenchel, both of Chicago, of counsel.

Mr. Justice Robson delivered the opinion of the court.

This is an appeal by defendant, Mandel Brothers, Inc., from an order of the circuit court of Cook county sustaining the motion for summary judgment of plaintiff, The Sampson Company, a corporation, and entering judgment against defendant for $3,068.54, including interest from September 10, 1951, together with costs.

Plaintiff's amended complaint alleges sales of certain quantities of Columbia phonograph records valued at $2,843.49 made at the request of and to defendant on or about September 4 and 10, 1951. Defendant filed a jury demand and thereafter a motion to strike and dismiss on the ground that the alleged sales were unenforceable under section 4 of the Uniform Sales Act (Ill. Rev. Stat. 1951, chap. 121½, par. 4 [Jones Ill. Stats. Ann. 121.08]). In support thereof defendant filed the affidavit of Maire Flynn, supervisor of its phonograph record department, who deposed that no part of the records was ever accepted, nothing ever given in earnest or in part payment and no note or memorandum in writing ever signed by defendant or its agent in its behalf. The motion was denied and defendant was ordered to answer. Plaintiff then moved for summary judgment and filed supporting affidavits. Defendant answered, incorporating as matter for defense the averments of its affidavit, and thereafter filed its counteraffidavits of merit to plaintiff's motion.

Plaintiff filed its reply to defendant's answer and re-alleged the sales. The court later denied defendant's motion to vacate and set aside the judgment order and for leave to file an amended affidavit of merits.

Defendant's principal contentions on this appeal are (1) that the plaintiff's motion for summary judgment should not have been sustained because of the existence of genuine material issues of fact on the question of sales; and (2) that the recipient of goods without order and without acceptance becomes, at most, an involuntary bailee, responsible only for exercising a reasonable degree of care over the goods while in its custody. It is permitted, therefore, when authorized without specification, to select any reasonable means of transportation for return of the records—delivery to the carrier constituting delivery to the owner—and is not liable for any subsequent loss.

The governing principles guiding summary judgment procedure are stated in *Gliwa v. Washington Polish Loan & Building Ass'n*, 310 Ill. App. 465. The procedure may not be used to impair right of trial by jury. Its purpose is not to try an issue of fact but to try whether one exists between the parties within the legal meaning. Affidavits for plaintiff should be construed strictly, those for defendants liberally. Plaintiff's right to judgment should be free from doubt. If the defense is arguable, apparent, made in good faith it should be submitted to a jury. The court is bound to accept statements of fact as true when alleged in defendant's affidavits. The whole record must be considered.

Plaintiff's affidavits and exhibits show that Fred Cassman, its record division sales representative, conferred in person and over the phone with Maire Flynn, "buyer" in defendant's record department, from about August 15 until about September 7, 1951, in the course

of which Flynn ordered and purchased the invoiced records on defendant's behalf; that on or about August 31, and on or about September 7, 1951, Cassman advised John Schlechter, plaintiff's credit manager in charge of the books of account and records of its record division, of defendant's own Order No. 16545–6–7–8 in the quantities and values invoiced, and Schlechter caused the records to be prepared and delivered. A few days subsequent to each delivery, Schlechter was in receipt of defendant's vouchers, in which defendant charged itself for the full amount of the invoices and credited itself with the allowable discounts. Third copies of plaintiff's invoices were returned by the driver of its delivery service stamped, "Received," "Sep 4 51," and "Sep 10 51," respectively, "Subject to Inspection Mandel Brothers."

Defendant's counteraffidavits of merit deny that Maire Flynn was its buyer, and aver that during the period in question Flynn was supervising retail sales in its record division; that though Flynn prepared an order for certain records on defendant's own order form pursuant to instructions from Jerome Unger, its buyer of records, following Flynn's and Unger's discussions with Cassman, the order was tentative only and subject to approval or rejection by Flynn's and Unger's "superiors"; that Cassman was not given a copy of that order; that none represented to Cassman that the order would be confirmed; and that Cassman himself made entries on plaintiff's own order form or forms which was or were marked, "Hold for Confirmation." Flynn and Unger deposed that none confirmed the order; that they do not now recall the nature and quantity of such tentative order and cannot now locate it. When the records subsequently arrived in defendant's record department, Unger instructed Flynn to have them returned, though twice-attempted redeliveries were refused. Unger then conferred with Cass-

man and Janklow, plaintiff's employees, and on behalf of plaintiff Cassman agreed to take back the records and defendant agreed to return them, and Cassman prepared plaintiff's form return authorization without which returned merchandise would not be accepted by plaintiff, and which bears Cassman's signature; the written words, "No Confirmation," in the column titled, "Reason"; and the date, "10–5–51," inserted in the blank following the printed words, "Re: Authorization to return Columbia records as per your request of . . . ."

Defendant's counteraffidavits and exhibits further show two letters with accompanying statements of accounts payable, written and dated by the plaintiff, respectively, November 14 and December 13, 1951, which acknowledged the fact that plaintiff no longer considered defendant indebted to it in the amount of the invoices, but which called defendant's attention to the fact that, in crediting itself with the full amount of the invoices, defendant had failed to charge itself and allow for the discount credits formerly taken. Defendant's second voucher shows defendant credited itself with the second invoice discount, credited itself with the full amount of the invoices, but failed to charge itself back with the discount credits taken in both vouchers. The vouchers bear no dates other than those appearing as the invoice dates, August 31, 1951 (first voucher), and September 7, 1951, together with the date September 25, 1951, twice repeated, evidencing the date defendant's full invoice credits were taken (second voucher). Defendant, averring the vouchers were not sent plaintiff until October 23, 1951, denied that plaintiff received them "a few days subsequent" to each delivery. Defendant's debit memoranda C 10084 and C 10085, in which it took the invoice credits, and which are referred to by letters and numbers in its second voucher and referred to also in plaintiff's letter

of November 14, 1951, are dated September 25, 1951, and were sent to plaintiff some time afterward.

Defendant's counteraffidavits and exhibits show, further, that all delivery receipts are stamped at its receiving dock without immediate inspection; that the vouchers are prepared as a matter of course by its accounting department to maintain a running account with its suppliers and reflect defendant's charges and discount credits as the goods are received and the credits subsequently taken in cases of mistake, defect or other causes requiring adjustment, payment of any balance in favor of the supplier made by check and accompanied by the vouchers showing how the balance was computed. On or about October 16, 1951, following the agreement between the parties, defendant prepared a bulk merchandise delivery ticket in accordance with its debit memoranda C 10084 and C 10085 and the record cartons' markings, and the sixteen cartons and delivery ticket were turned over to defendant's delivery service, Consolidated Deliveries, Inc., an independent contractor, for redelivery to plaintiff. On or about January 15, 1952, defendant was first notified that plaintiff was claiming nonreceipt and demanding payment of the sales price.

Section 4 of the Uniform Sales Act (Ill. Rev. Stat. 1951, chap. 121½, par. 4 [Jones Ill. Stats. Ann. 121.08]) provides that no contract to sell or sale of goods five hundred dollars or more in value shall be enforceable by action unless the buyer shall accept part of the goods and actually receives the same; that this section shall apply notwithstanding that the goods may be intended to be delivered at some future time; and that there is an acceptance of goods when the buyer, either before or after delivery, expresses by words or conduct his assent to become the owner. Section 48 (Ill. Rev. Stat. 1951, chap. 121½, par. 48 [Jones Ill. Stats. Ann. 121.52]) provides that the buyer is deemed to have

accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them.

 It is apparent from our review of the record that if plaintiff is to recover the price of the records, acceptance by the defendant must be shown. The first question to be considered, therefore, is whether there is a triable issue on the averment that plaintiff sold and defendant purchased the records. Defendant does not deny that Order No. 16545–6–7–8 was its own order number, or that it stamped the return invoices, "Received," at its receiving dock, or that it charged itself for the full amount of the invoice and took the allowable discount credits. It contends, however, that the order was tentative only, that the records were received and the return invoices stamped as a matter of course, and that the vouchers reflect only its accounting practice. It further points to the return authorization's written language, "No Confirmation." How Cassman did in fact procure defendant's own order number does not appear and the question whether it was given, if given, subject to confirmation is disputed. The time when the vouchers were issued to and received by plaintiff is also disputed. If the first voucher was issued shortly after the September 4 delivery, it may, when taken together with the other disputed facts, intimate acceptance by the defendant. If not issued until October 23, 1951, the first notice by the defendant of rejection to the plaintiff becomes important. It is not clear when the debit memoranda, dated September 25, 1951, were sent to and received by the plaintiff. The return authorization gives 10–5–51, approximately 25 days after the September 10 delivery and more than

99

a month after the September 4 delivery, as the date defendant requested return of the records to plaintiff. Under all the circumstances, it cannot be said that reasonable men will agree that defendant did or did not retain the records an unreasonable time before intimating to the plaintiff that it had rejected them. The language of the return authorization is an admission against interest (cf. *Linn v. Clark,* 295 Ill. 22, 31–3; *Osborne v. Osborne,* 325 Ill. 229, 231), competent and relevant as evidence against the plaintiff, but, when considered with all other evidence in the case, not conclusive as a matter of law. A jury may reasonably infer, on the conflicting evidence, that defendant did or did not intend to accept the records. *Brenton v. Sloan's United Storage & Van Co.,* 315 Ill. App. 278, 42 N.E.2d 945; *Augustine v. Kaufman,* 338 Ill. App. 591, 88 N.E.2d 378; 77 C. J. S. Sales 996. This was a question of fact for a jury.

 The question next arises whether defendant may be held liable if no sale is found, and what may be the extent of its liability. Defendant calls itself an involuntary bailee. However accurately that might have characterized defendant's original legal duty toward plaintiff, it does not square with defendant's subsequent voluntary assumption to retain possession and control over the records for the purpose of eventual redelivery to plaintiff. Thus, it had notice and knowledge of its own possession of the records and plaintiff's ownership. However gratuitous its undertaking, it voluntarily undertook to hold them for redelivery; however commendable its motives, it owed plaintiff the duty of reasonable care to protect the records from loss. *Miles v. International Hotel Co.,* 289 Ill. 320. Reasonable care means that degree of care, attention or exertion which under the circumstances a man of ordinary prudence and discretion would use in reference to the goods were they his own property.

*Schaefer v. Washington Safety Deposit Co.*, 281 Ill. 43. *Miles v. International Hotel Co., supra.* In the last cited case it was said (327–8):

"The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of *prima facie* negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault. (*Cumins v. Wood,* 44 Ill. 416; *Schaefer v. Washington Safety Deposit Co., supra.*) The effect of this rule is, not to shift the burden of proof from plaintiff to the defendant but simply the burden of proceeding. The bailor must in all instances prove that the bailee was negligent, but when she shows that the goods which she intrusted to the bailee's care were not delivered upon demand she has made out a *prima facie* case or created a presumption of negligence which the bailee may overcome by offering evidence to show that it was not negligent, and if it produces such evidence, the bailor, in order to make out her case, must show that the bailee was, in fact, negligent and that its negligence caused the loss or contributed thereto."

 Is there a triable issue of fact on the question whether defendant exercised the same care over plaintiff's records as it would have exercised in the care of its own property worth approximately $2,845? Defendant prepared a bulk merchandise delivery ticket and gave it to its delivery service, together with the record cartons. There is some dispute whether the delivery service was its own or an independent carrier. We do not consider that relevant on the question of the exercise of reasonable care. Defendant clearly would not have undertaken to ship $2,845 of its own merchandise without providing that some receipt showing delivery, whether to an independent carrier or to the

plaintiff, be returned and in that manner confirmed. The bulk merchandise delivery ticket is without signature, whether by one of defendant's employees, the carrier's or the plaintiff's. Defendant does not show that the records at any time left its shipping department, yet contends that they in fact did. The question arises, however, whether defendant's negligence caused the loss or contributed thereto. Plaintiff made no claim against defendant for the records or their price until January 15, 1952. Had it acted with diligence in the matter, perhaps the loss might have been avoided. Honest differences of opinion will arise among reasonable men upon whom the fault should rest. This was a question of fact for a jury.

We therefore conclude that triable issues of fact exist and the trial court was in error in entering judgment for plaintiff on its motion for summary judgment. The judgment of the trial court is reversed and the cause remanded with directions to try the case on the issues raised by the pleadings.

*Judgment reversed and cause remanded with directions.*

SCHWARTZ, P. J., concurs.

TUOHY, J., took no part.