Suzanne Taylor, Plaintiff-Appellant, v. Charles Plain, as Surviving Trustee Under the Last Will and Testament of John Plain, Deceased, et al., Defendants-Appellees.

Gen. No. 11,575.

Second District, First Division.

December 4, 1962.

■■■■■■■

■■■■■■■■■■■■■■■■■  ■■■■■

Baim & Baim, of Chicago (S. Jay Baim and Ezra L. D'Isa, of counsel), for appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora (W. C. O'Brien and J. H. Barnett, of counsel), for appellees.

SMITH, J.

Plaintiff sued to recover damages for injuries sustained when struck by a heavy door on business premises owned by the defendants and leased to others. The theory of the plaintiff was that the door and the entry way was a common way under the control of the defendants and that they negligently failed to inspect, maintain and keep it in repair. The tenants either were not sued or were dismissed out prior to trial. The trial court directed a verdict in favor of the defendant landlords, entered an appropriate judgment in bar and denied plaintiff's post-trial motion. The trial court held as a matter of law that plaintiff had failed to establish that the situs of the accident was a common way under the control of defendants and hence no liability attached as to them.

Counsel for all parties properly agree that on a motion for directed verdict the sole and only question is whether there is any evidence which fairly tends to support the plaintiff's action when considered, together with all reasonable inferences to be drawn therefrom, in its aspects most favorable to the plaintiff. Neither the weight of the evidence nor the credibility of the witnesses are considered. This rule for our guidance has acquired an almost ritualistic cadence and it need not here be discussed in detail. McKendree v. Cristy, 29 Ill App2d 195, 172 NE2d 380; Lester v. Hennessey, 29 Ill App2d 11, 172 NE2d 403; Stowers v. Carp, 29 Ill App2d

52, 172 NE2d 370. We turn to the evidence for its application.

Defendants own two two-story business buildings fronting on Water Street in the City of Aurora and housing multiple tenants. The building at 1–11 Water Street houses several small stores on the ground floor, a hotel on the second floor and its roof is occupied by illuminated signs of General Outdoor Advertising Company and the television antennas of the tenants. The building at 13 Water Street, adjacent to the other building, housed a gift shop on the ground floor and had been rented by one Leona Connery for almost 20 years on a month to month tenancy. Later, but several years before the accident, Mrs. Connery leased the second floor. Its roof was also occupied by signs of the advertising company. The advertising company gained access to this roof from a vacant lot for many years and until a building was erected on this lot, some five or six years before the accident. Thereafter, the advertising company gained access to the roof through the main front door of the gift shop operated by Mrs. Connery. This door is the situs of the accident. Through this door all tenants gained access to the roof of both buildings when necessary and the utility company entered through this door to read the meters. None of the tenants had keys to this door except Mrs. Connery. Called by the plaintiff, Mrs. Connery testified "I have occasion to open the door for all other tenants. That is all of them in the building. I mean the whole block. I have to open the door to allow them to get to the roof. I have the only key to that door. I have never had any conversation with the landlord allowing the use of the premises for an entrance way in and up to the roof."

The main door of the gift shop was recessed about three feet six inches from the sidewalk. It was a small areaway with two plate glass windows on either side. The door itself measured three feet eleven and one-

fourth inches, was six feet six inches high and two and one-half inches thick. There was a plain glass insert in the door itself. This door had a pneumatic door check or stop which closed the door slowly. There was no provision to hold the door open and this was accomplished by a wooden wedge inserted under the door. The wedge belonged to the tenant, Mrs. Connery.

Plaintiff and her mother entered the gift shop through this door. The door was open. Immediately inside the door was a tea cart which plaintiff stooped to examine and check the price tag. While in this position, the door started to close. The mother shouted at her daughter and attempted to catch the door but failed. It struck the plaintiff in the side of the head and drove her from a stooped to a sitting position on the floor. She was struck on the right temple causing hospitalization, surgery and the use of a neck brace for about three and one-half months. These facts are not controverted.

■ The defendant Plain, one of the owners of the property, had the active management of the property for the other owners. He testified that he had repaired the windows and put in a new door some two years before the accident at Mrs. Connery's request. He didn't know whether anyone else had a key to the door or not. He had many times seen the wedge used to keep the door open and was aware that the other tenants gained access to the roof through the gift shop. On his testimony, plaintiff argues that the defendants are liable on the theory that they leased the premises with actual or constructive knowledge of a defect or dangerous condition of the door and also on the theory that, since the landlord assumed to repair or improve the property, although not obliged to do so, and did so improperly, the defendants are liable. Neither of these theories is before us. The first was the basis for recovery alleged in one of the dismissed counts. The second was not

162

mentioned in the post-trial motion. Thus the plaintiff effectively interred both theories in the trial court and it is beyond our power as a court of review to reincarnate them here.

South of the main door of the gift shop, and at the south end of the building, was a second door opening on the sidewalk which furnished access to a stairway to the second floor. Defendant Plain testified that the arrangement he had with the advertising company was for them to have access to the roof of the building through this door and stairway. When Mrs. Connery leased the second floor of the building she changed the lock on this door and apparently had the only key to it. At the foot of the stairway was a door opening into the gift shop. It was generally blocked by trash barrels, and those seeking access to the roof would enter the main door of the gift shop, move the trash and proceed up the stairway to the roof. Plain further testified that nobody said anything to him about the advertising company's use of Mrs. Connery's front door.

■ ■ Plaintiff contends that the circumstance of repair by the defendants, knowledge that the other tenants had to have access to the roof, knowledge that Mrs. Connery had changed the lock to the south door, knowledge of the wedge, creates circumstances from which a jury could reasonably infer that the situs of the accident was a common areaway and under the control of the defendants. For a jury to find in this record a common areaway, or its control by the defendants, would indeed be a mirage in a factual desert.

This record is barren of any discussion between Mrs. Connery and Mr. Plain about the use of the main door by other tenants of the building in connection with her tenancy. The record is bare of any claim by the other tenants that they had the right to use this door for access to the roof of the two buildings. There isn't a single word in the record suggesting that its use was

163

a part of the leasing arrangements with any one of the multiple occupants of these buildings. There isn't a word suggesting that either the defendants, Mrs. Connery, or the other tenants regarded this door and areaway as reserved for the common use of all. Indeed it appears that the defendants expected the advertising company to use the south door of the building and the stairway. It strains credulity to believe that Mrs. Connery would have agreed to the use of the main front door of her gift shop indiscriminately by multiple tenants at such times as their whim and caprice might dictate. There is no evidence that the landlord ever designated this door for the use of the other tenants for access to the roof, or that they ever requested it of him. This record is pregnant with the inescapable conclusion that the use of the situs of this accident was with the permission, acquiescence and consent of Mrs. Connery and that they obtained access to the roof only at her pleasure and at such times as she directed. Such permission creates no duty and imposes no liability on the landlord. Culver v. Kingsley, 78 Ill App 540. We necessarily conclude that reasonable minds would agree that the plaintiff has failed to establish, by inference or otherwise, that there was a common areaway or that it was under the control of the defendants. Having so failed, the plaintiff fails to trigger into action the admitted rule imposing a duty and liability on the defendant landlords. Murphy v. Illinois State Trust Co., 375 Ill 310, 31 NE2d 305; Sydor v. Warpack, 332 Ill App 138, 73 NE2d 924.

We therefore conclude that the judgment of the trial court was and is correct and it is accordingly affirmed.

Affirmed.

DOVE, P. J. and McNEAL, J., concur.