Hosea Lee Patterson, Plaintiff-Appellant, v. Mildred W. Stern and Harry Birkenstein, Individually and as Trustee Under the Testamentary Trust Created by the Last Will and Testament of Leon Weil and Weil and Eisendrath Company, Defendants-Appellees.

Gen. No. 50,925.

First Judicial District.

October 18, 1967.

 █

Blaha, Hydler and Jackson, and Jerome H. Torshen, of Chicago (William A. Blaha and Jerome H. Torshen, of counsel), for appellant.

Ross, Jacobson & Sorensen, of Chicago (Howard C. Sorensen, of counsel), for appellees.

EBERSPACHER, J.

Plaintiff Patterson, an employee of Arenberg who was a tenant of a portion of a building leased by defendants Stern and Birkenstein,[1] fell through a guardrail located in the outside wall of the building and suffered injuries. Plaintiff brought this action against the defendant landlords alleging negligence in the maintenance and possession of the building within the alleged control of the landlords. Defendants moved for summary judgment on the theory that the guardrail formed a portion of the premises leased to plaintiff's employer. Summary judgment was entered for defendants and plaintiff here appeals.

Plaintiff prays reversal of the summary judgment on the theory that the allegedly defective guardrail was

---

[1] Defendants Stern and Birkenstein, are not the owners of record but are treated as such at law because they are the trustees of a testamentary trust under the Last Will and Testament of Leon Weil, deceased. They were signatories to the lease of Arenberg. The other defendant, Weil and Eisendrath Company, a corporation, was a tenant of a portion of the building which is not herein involved.

excluded from the demised premises by the explicit terms of the lease between plaintiff's employer and defendants; that such guardrail formed a portion of the exterior wall within the control of the landlord; and that the evidence presented to the court in support of the oral motion for summary judgment, presented when the case was called for trial, was insufficient to demonstrate that there were no genuine issues of material fact between plaintiff and defendants.

Defendants contend that the trial judge properly entered summary judgment in favor of the defendants because (a) the guardrail, allegedly in a state of disrepair, which disrepair was the alleged cause of the occurrence which led to plaintiff's injury, was in the exclusive possession and control of plaintiff's employer by lease; and, (b) such railings were shown to be in a state of good repair.

Plaintiff's complaint alleged that Arenberg had on August 3, 1965, leased from defendants a certain area on the 5th floor of the building and that defendants owed a duty to plaintiff, as well as to others lawfully present, to exercise reasonable care in the repair and maintenance of the premises, "more particularly the railing on the balcony adjoining the leased premises." On the hearing on the motion for summary judgment a copy of the lease was put into evidence. It provided in part:

> ". . . Lessor hereby leases unto . . . lessee, and the lessee accepts the premises known as one thousand (1,000) square feet located on the 5th floor, being the middle south portion *between* the rear chute door and fire escape, all located in the building at 2221 North Elston Avenue, Chicago, Illinois . . ." (Emphasis supplied.)

In support of defendants' motion for summary judgment, they called as a witness an officer of certain of defendants. Over objection that the lease spoke for

402

itself, he was allowed to testify that "the lease or all the leases in the building included common stairways, common elevator use of all the tenants, and common exits where there was more than one tenant per floor," and that another tenant occupied a portion of the same floor. In addition, two photographs, one Defendants' Exh. 2 showing the rear chute door referred to in the above quoted portion of the lease, closed and barred, the other Defendants' Exh. 3 showing the same door open and exposing an area extending beyond the chute door and a wooden guardrail located 3 or 4 inches beyond the chute door, in the outside wall of the building, were admitted into evidence, over objection. The witness testified that the two exhibits correctly portrayed the general appearance of the area at the time of the accident. On cross-examination the witness admitted that he knew neither who had taken the photographs nor the date they were taken. He testified that the lessee was the only person who had access to open the door, (which opened inward onto the leased area), and that the only use the tenant ever made of the area beyond the door was to get air for ventilation, and that he made no use of it for any other purpose. There was no evidence that the tenant had ever used the chute or any of the area beyond the door for any other purpose, nor was it shown that the nature of the tenant's operation on the leased premises was such as required the use of any portion of the building beyond the chute door.

On motion for summary judgment all inferences are to be resolved in favor of the respondent and summary judgment is not proper unless, viewing all evidence most favorable to respondent, there is no genuine issue of material fact. Di Battista v. Centennial Ins. Co., 52 Ill App2d 84, 201 NE2d 466. And the right to judgment must be clear beyond question, Solone v. Reck, 32 Ill App2d 308, 177 NE2d 879; and the whole record must be considered. Sampson Co. v. Mandel Bros., Inc.,

3 Ill App2d 92, 120 NE2d 571. A motion for summary judgment should be denied if upon examination of the record it can be fairly said that a triable issue of fact exists. Des Plaines Motor Sales Inc. v. Whetzal, 58 Ill App2d 143, 206 NE2d 806.

██ ██ We know of no rule of law which suspends the rules of evidence, including the parole evidence rule, in presenting testimony of a witness in lieu of supporting a motion for summary judgment with affidavits. Affidavits in support must be statements of fact and not mere conclusions, opinions or beliefs, and affiants must have personal knowledge of the facts stated. The same rule must apply to the testimony of a witness whose testimony is substituted for an affidavit. As an affidavit in support, it must be strictly construed and leave no question as to the movant's right to judgment. Here, the witness's testimony contradicts the terms of the lease which was in evidence; he was allowed to testify that no one besides the lessee had access to the chute door, although the lease specifically provided that the lessors could make alterations and improvements which would permanently close the opening and chute and make alterations to the "Building, or any part thereof, including the premises." [2]

---

[2] Section 12 of the lease provided: "Repairs: Subject to the provisions of sections 10 and 13, Lessee shall, at Lessee's own expense, keep the premises in good order, condition and repair during the term, including the replacement of all broken glass no matter how the same may be broken, with glass of the same size and quality with sign thereon, under the supervision and with the approval of Lessor. If Lessee does not make repairs promptly and adequately, Lessor may, but need not, make repairs and Lessee shall, upon Lessor's demand, pay the cost thereof. At any time or times, Lessor either voluntarily or pursuant to governmental requirement, may at Lessor's own expense, make repairs, alterations or improvements in or to the Building or any part thereof, including the premises, and, during operations, may close entrances, doors, corridors, elevators or other facilities, all without any liability to Lessee by reason of interference, inconvenience or annoyance. Lessor shall not be liable to Lessee for any expense,

There was no evidence as to when the witness had viewed the door, chute, and railing, with reference to its condition of repair, yet he was allowed to testify that Defendants' exhibits 2 and 3 correctly portrayed the general appearance "of the area" at the time of the accident, while on cross-examination he did not know who took the pictures or when they were taken. From his evidence, the last time he had seen the chute and railing could have been in 1956 when the lease was executed.

■■ Defendants contend that since plaintiff offered no evidence to contradict the defendants' evidence in support of the motion, that therefore the facts are not in dispute and they are susceptible of a single inference and, therefore, present only a question of law. Under the state of the evidence it was not necessary for plaintiff to produce any evidence or affidavit. At an early opportunity defendants put the lease into evidence; it disclosed that plaintiff's employer was the lessee only of a well defined portion of the 5th floor which he was obligated to keep in repair, that lessors retained control of all portions of the building not leased for all purposes, including repair. Throughout the lease there is a consistent distinction between the building and the portion of the building, described as the premises, which is described as the area between the chute doors and the fire escape. It, of course, must be strictly construed since it was prepared by defendants and offered into evidence in support of their motion for summary judgment. The lease does not demise appurtenances to those premises and furthermore the testimony presented pertains to the doorway, not the exterior guardrail. If there is "a single inference" to be

---

injury, loss or damage resulting from work done in or upon, or the use of, any adjacent or nearby building, land, street or alley. Lessee shall pay Lessor for overtime and for any other expense incurred in the event repairs, alterations, decorating or other work in the premises are not made, at Lessee's request, during ordinary business hours."

drawn, it is that the guardrail which allegedly gave way, was on the premises reserved to defendants. If the witness's testimony raises any inference contrary to the written terms of the lease, the lease must prevail for the reason that all inferences on a motion for summary judgment must be resolved in favor of respondent, and disputed questions of fact cannot be summarily resolved.

Defendants urge that the chute doorway, the guardrail or railing and the double doors fit Bouvier's definition of an appurtenance to a leasehold, and cites Bouvier's Law Dictionary, Rawle Revision Vol 1, 224:

> "The word has technical signification, and, when strictly considered, is employed in leases for the purpose of including any easements or servitudes used or enjoyed with the demised premises."

This definition defines the term "appurtenance" as "employed in leases," but in the case at hand the word appurtenance is not employed in the sections of the lease describing the premises demised, or those describing the obligations to repair.

The lease appears on its face clear and unambiguous, and there has been no showing by extrinsic evidence that it is uncertain in meaning. Defendants do not contend there is an ambiguity in it; instead they choose to ignore it as evidence. They do not contend that the word "between" used in the demise of the premises has a meaning other than the space that separates two things (the chute door and the fire escape) and which is not itself a part of either of the things that it separates. 10 CJS, Between, p 349. We are unable to find that Illinois courts have defined "between" with reference to distance. However, the above definition is consistent with the holdings of our courts where the word has been defined with reference to time, as including only an intervening period excluding terminal boundaries. Greenberg v. Nieman, 320 Ill App 99, 49 NE2d 817; Winans v. Thorp, 87 Ill App 297.

406

Ignoring the provisions of the lease, defendants contend that the railing is an appurtenance to the leased premises because there was testimony that the tenant had exclusive benefit and control of the doorway and thus of the railing some 3 to 4 inches beyond it, and which filled the opening in the masonry of the outside wall of the building beyond the doorway. As stated, the inference is otherwise.

As to benefit, the only evidence is that of lessee's use of the doorway for ventilation; plaintiff's injury occurred beyond the doorway and the allegedly defective guardrail had nothing to do with ventilation. Examination of this record leads us to believe that the greatest benefit provided by the existence of the doors, chute and guardrail, was that afforded the owners of the building by not being required to spend any money to remove it and close up the hole, or the benefit of having the chute open in the event the next prospective tenant might be engaged in an activity which would require its use, and thus make the premises more attractive to such prospective lessee. As to the control of the chute, doorway and railing, lessors specifically reserved control in the quoted section of the lease.

Defendants urge that the rule of law stated in Woods v. Lawndale Enterprises, 302 Ill App 570, 573, 24 NE2d 193, 195:

> "As a general rule of law, a landlord is not liable for injuries on premises leased to a tenant and under the tenant's control. This rule applies not only to the enclosed portion of the premises, but also to any entrance, passageway, etc., so long as these appurtenances are not reserved under the landlord's control in common for the use of the tenants of the entire building."

is to be applied in the present case. In that case "the leased premises are described as 4025 West Roosevelt

407

Road" (302 Ill App 582) and the "entranceway was not reserved under the landlord's control" and "the tenant expressly covenanted to keep the premises *and the appurtenances* in good repair." (302 Ill App 583.) (Emphasis supplied.) That case followed the case of West Chicago Masonic Ass'n v. Cohn, 192 Ill 210, 61 NE 439, in which an injured plaintiff fell into a coal hole in a sidewalk of certain premises and brought suit against the owner. There the evidence showed that the tenant had agreed to make all repairs required to fixtures used in connection with the demised premises, (192 Ill 215), and "the portion so leased includes a vault under the sidewalk of a public street and a coal hole opening into the vault" (192 Ill 221). There the tenant had expressly covenanted he would keep the coal hole and the cover thereto in good repair, 192 Ill 218 and 221, and the court pointed out that in order for the general rule to be applicable, the evidence must show that the "tenant as against the owner, has, and is entitled to have, exclusive possession and control of the basement, coal hole and vault, and has covenanted to keep the same in good repair" 192 Ill 222. In the present case, the landlord retained control of the opening, chute and railing; the lease did not include them but excluded them by the preciseness of the description of the demise, and the tenant covenanted only to keep the demised premises in good repair and there were no covenants providing that the tenant should repair appurtenances or adjoining premises which had not been damaged by the tenant.

Kalil v. Wolldenroot Operating Co., 341 Ill App 58, 92 NE2d 786, involved actions against a tenant who was not negligent and the tenant of the balance of the building. It did not concern itself with landlord's liability. As stated by the court in its opinion at 341 Ill App 60: "Plaintiff was given leave to amend his complaint against the owners, the remaining defendants." Thus, the landlords remained in the suit after all tenants were absolved

from liability for an accident which occurred on a vault door in a sidewalk.

In Jackson v. 919 Corp., 344 Ill App 519, 101 NE2d 594, the landlord was absolved of liability to a pedestrian who was injured by a falling glass panel. There the plaintiff conceded that the tenant had exclusive possession and control of the inner window, the breaking of which injured plaintiff. In that case the court pointed out that the tenant had covenanted to replace any and all broken glass "in and about said premises" and also that the "lessor did not retain any right to enter into the demised premises for purposes of inspection, repair or otherwise." In the present case, the injury complained of did not result from broken glass, and the lessor not only reserved the right to enter the leased premises to repair, but reserved the right to alter the building closing the opening and the chute and to permanently fill the hole in the outer wall in which the guardrail was located, at lessor's expense.

In Taylor v. Plain, 38 Ill App2d 159, 186 NE2d 544, there was a month to month tenancy, no lease was in evidence which showed any control in the landlord, rights to enter the premises by the landlord, or a description of any portion demised. In that case, plaintiff's theory was that the area in which she was injured was a common way under control of the owner. The court affirmed the trial court holding that it was not. There the tenant was the lessee of both floors of a two-story building, not any specifically described portion thereof, and the door was clearly included in the leased premises.

 The specific demise of an interior section of the building to one of several tenants therein with restrictive language such as that in the instant lease reserved to the landlord the responsibility for the outer walls. Ciskoski v. Michalsen, 19 Ill App2d 327, 335, 152 NE2d 479; Campbell v. Banks, 257 Ill App 354, 357; Burlingham v. Gordon, 201 Ill App 474, 476; Fairmount Lodge No.

590, A. F. & A. M. v. Tilton, 122 Ill App 636, 638. As stated in Ciskoski v. Michalsen, 19 Ill App2d 327, 152 NE2d 479 at p 335:

"In Burlingham v. Gordon, 201 Ill App 474 (1916), on p 476, the court quoted from 1 Taylor on Landlord and Tenant, sec 175a, where it is said:

" 'A demise of parcels out of a building leaves the responsibility for what is not demised, upon the landlord. The roof, halls and passages not demised, chimneys, eaves *and outside walls,* remain the landlord's charge.'

"This rule was again quoted in Campbell v. Banks, 257 Ill App 354 (1930)." (Emphasis supplied.)

In the case at bar, the allegedly defective railing was the exterior of the building. In Burlingham v. Gordon, supra, the lease did not specifically mention the "exterior." The court held that in view of the language of the lease the tenant did not agree to make outside repairs. Other courts have also held the landlord responsible for defects to exterior walls.[3]

Defendants here have contended that the photographs are undisputed evidence that the doors, chute and railing are in a state of good repair. All they purport to show is a part of each of those three objects at a time undisclosed by this record. There is nothing in this record to disclose the size of the opening in the wall which these three objects fill, and we are not even able to determine how much of each of these objects are either included in the photographs or excluded therefrom, although it is

---

[3] Stupka v. Scheidel, 244 Iowa 442, 56 NW2d 874 (1953); Howe v. Howe, 266 App Div 799, 42 NYS2d 15, 16 (1943); Shines v. W. & Y. Realty Corp., 284 NY 647, 30 NE2d 494 (Court of Appeals, NY, 1940); Tucker v. Taksel (Mo App), 345 SW2d 385 (1961); Yorra v. Lynch, 226 Mass 153, 115 NE 238, 239 (1917) (party wall not specifically mentioned in lease giving tenant control of roof remained in control of landlord).

obvious that no one of the objects is completely shown. As a result, their value as evidence in support of a motion for summary judgment, in the state of this record, is nil. There is no testimony in the record as to the condition of repair of any one portion of either the leasehold or those parts of the building adjoining it. As a result, nothing was offered relating to condition and state of repair that plaintiff needed to dispute, to defeat the motion.

We therefore conclude that triable issues of fact exist and the trial court was in error in entering judgment for defendants on the motion for summary judgment. The judgment of the trial court is reversed and the cause remanded with directions to try the case on the issues raised by the pleadings.

Judgment reversed and cause remanded with directions.

MORAN and GOLDENHERSH, JJ., concur.