OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, Plaintiff-Appellee, *v.* DUANE M. PADGETT *et al.*, Defendants-Appellants.— (People's Bank of Bloomington, Adm'r of the Estate of Steven R. Hefferin, Deceased, *et al.*, Defendants.)

Third District   Nos. 82—204, 82—186 cons.

Opinion filed March 10, 1983.

Michael L. Pitzer and Thomas J. Horn, both of Brown, James, Rabbitt, Whaley, McMullin & Pitzer, of St. Louis, Missouri, and Robert G. Wuller, Jr., of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellants.

R. Michael Henderson and James R. Morrison, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Occidental Fire and Casualty Company of North Carolina filed a complaint for declaratory judgment against defendants Duane M. Padgett, Ace Doran Hauling and Rigging Company, Guarantee Insurance Company, and others not party to this appeal, seeking a declaration that its insurance coverage did not extend to the situation at bar. After a hearing on the merits, the circuit court of Peoria County entered summary judgment in plaintiff's favor.

Padgett is an independent trucker who owns his own equipment. On March 4, 1977, he entered into a "permanent lease" with Ace Doran. Contrasted in the industry with a "trip lease," the arrangement continues at least on a monthly basis until it is terminated. Before the day of the accident from which the coverage question arose, Padgett had picked up a load to Ohio pursuant to his "permanent lease" and was notified by an Ace Doran terminal manager that the company had a load available for him in Galesburg. Padgett proceeded to Indiana, where he picked up a load for National Trailer Convey under a "trip lease," and continued on to Galesburg.

After arriving at the Ace Doran terminal in Galesburg, Padgett waited from morning until closing for his trailer to be loaded. The terminal manager finally told him it would not be possible to load the trailer that day, and that he should go home. Padgett left his trailer at the terminal to be loaded and proceeded home on Interstate 74. Ace Doran's name and Interstate Commerce Commission (hereafter ICC) permit number were on his tractor and were not concealed. While traveling through Peoria County, he struck a vehicle, giving rise to the underlying tort action.

The sole issue we need today decide is whether Padgett was "in the business" of Ace Doran. This issue arises from the following language contained in plaintiff's policy:

"It is agreed that such insurance as it is afforded by the policy
\*\*\* does not apply:
\*\*\*

(b) while the automobile or any trailer attached thereto is used to carry property in any business;

(c) while the automobile is being used in the business of any person or organization to whom the automobile is rented."

Three decisions of our supreme court guide our determination.

In *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 368 N.E.2d 1287, the tractor in question was leased to the defendant, a carrier engaged in interstate commerce under a certificate issued by the ICC. The lessor had transported a load for the defendant from Iowa to Connecticut, carried a load for another carrier from Connecticut to Chicago, and driven the tractor and empty trailer to his home in Savanna. The next day he drove to Iowa to drop off the trailer at the defendant's terminal. On his way home in the tractor, an accident occurred. After discussing other provisions of part II of the Interstate Commerce Act (49 U.S.C. sec. 301 *et seq.* (1976)), the court concluded:

"The rules also provide for identification of the leased equipment as that of the carrier-lessee (1057.4(d)) and that 'The authorized carrier operating equipment under this part shall remove any legend, showing it as the operating carrier, displayed on such equipment, and shall remove any removable device showing it as the operating carrier, before relinquishing possession of the equipment' (1057.4(d)(1)). In *American Trucking Association, Inc. v. United States*, 344 U.S. 298, 97 L. Ed. 337, 73 S. Ct. 307, in which the rules and regulations were held valid, the Supreme Court reviewed the abuses which the Act and accompanying regulations were designed to prevent,

218

among which was the difficulty of 'fixing financial responsibility for *** injuries to *** members of the public.' *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 37, 46 L. Ed. 2d 169, 177, 96 S. Ct. 229, 234.

*** We are of the opinion that it was the purpose of the regulatory scheme that the carrier-lessee be vicariously responsible to the public for the negligent operation of the leased vehicle without regard to whether at the time in question it was being used in the business of the lessee. (See *Cosmopolitan Mutual Insurance Co. v. White* (D. Del. 1972), 336 F. Supp. 92.) To hold otherwise would permit injecting into each case the issues of agency, scope of employment and purpose of the movement out of which the occurrence arose, thus defeating the declared purpose of the regulations to eliminate the problem of fixing responsibility for damages and injuries to members of the public. Absent proof of compliance with sections 1057.4(d) and 1057.4(d)(1), we hold that if Dixon is liable to plaintiff, defendant must be held vicariously liable." *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 12-13, 368 N.E.2d 1287, 1289.

In *St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 370 N.E.2d 1058, the tractor in question was leased to Wilson Freight Company, again a carrier engaged in interstate commerce under a certificate issued by the ICC. The lessor-defendant had transported a load for Wilson from Pennsylvania to Oklahoma, drove to Wilson's Granite City terminal, where he took his name off an availability list, and departed with an empty trailer for his home in Ohio. As the truck was exiting Interstate 74 in East Peoria, an accident occurred. Plaintiff had issued the defendant an insurance policy which excluded coverage using the exact language of provisions (b) and (c) of the policy at bar. The court discussed these provisions:

"In the case at bar, we find that the disputed insurance policy is ambiguous to the limited extent that it does not define 'in the business of' to necessarily be the equivalent of the carrier's liability under ICC regulations. Because the insurance company prepared the policy, such ambiguity will be strictly construed against the insurer. *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co.* (1952), 411 Ill. 325, 332; *Pre-Cast Concrete Products, Inc. v. Home Insurance Co.* (7th Cir. 1969), 417 F.2d 1323, 1325.

Absent any reference in the insurance policy to the ICC regulations, the term 'in the business of' must be construed according to its recognized common usage in conjunction with the rest

of the policy. Wilson contends that Frankart, in applying for 'bobtail and deadhead' insurance, insured himself for any accidents occurring while the tractor was being operated without a trailer or while pulling an empty trailer. Section (b) of the policy endorsement excludes coverage whenever the tractor-trailer is hauling loads in any business. If this were the only provision in the endorsement, Frankart would have been covered whenever he was 'bobtailing' or 'deadheading.' However, section (c) further excludes coverage whenever Frankart's tractor is being used in the business of any lessee. Section (c) does not purport to exclude coverage only when a load is being hauled for the lessee. Such a reading would render section (c) totally meaningless next to the broader exclusion of section (b). It is a fundamental rule of construction that meaning and effect, if possible, be given to every part of a contract so that one provision is not construed to annul another. (4 Williston, Contracts sec. 618, at 715 (3d ed. 1961); 12 Ill. L. & Prac. *Contracts* sec. 215 (1955); *State Security Insurance Co. v. Goodman* (1972), 6 Ill. App. 3d 1008, 1012-13.) Applying this rule of construction, the policy clearly provides that coverage is excluded when Frankart's trailer is being used in the business of a lessee even if, at the time of the accident, the tractor is pulling an empty trailer." (*St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 215-16, 370 N.E.2d 1058, 1061.)

Having so decided, the court went on to determine if the defendant was "in the business" of Wilson:

"Wilson's failure to have another assignment for Frankart at its Illinois terminal did not terminate its 'exclusive possession, control, responsibility and use' of Frankart's tractor-trailer provided under the lease. It is the nature of Wilson's business that its owner-drivers will be relieved of a load at a point of delivery, and that, unless another load can be picked up on the return trip, the owner-drivers must make their return trip pulling an empty trailer. As Wilson's vice president conceded, the original assignment does not terminate at the point of delivery. We find that it continues *at least* until the owner-driver returns to the point where the haul originated (Coatesville, Pennsylvania), to the terminal from which the haul was assigned (Cleveland, Ohio), or to the owner-driver's home terminal from which he customarily obtained his next assignment (Findlay, Ohio). \*\*\* We find, as a matter of law, that during Frankart's return trip to his home in Ohio, his tractor-trailer continued to be used in Wilson's business." (Emphasis added.) *St. Paul Fire & Marine*

*Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 218-19, 370 N.E.2d 1058, 1062.

In the case at bar, Padgett's home terminal was located in Galesburg. Under *St. Paul*, he was "in the business of" Ace Doran *at least* until he arrived at the terminal. The question becomes whether he retained that status after he left for his home in Indiana. We consider both the specific facts here present and the interplay of the ICC regulatory scheme.

After taking a load to Ohio, Padgett was advised by Ace Doran Terminal Manager Burt Carlson that there was a load available for him in Galesburg. Padgett then picked up a load in Indiana to be transported to Galesburg under a "trip lease" to another carrier. The "trip lease" to Galesburg was with Ace Doran's permission, and Padgett stated that had Carlson not advised him of the available Ace Doran load there, he would not have "trip leased" to Galesburg. After arriving in that city the morning of July 2, 1980, he waited all day for his trailer to be loaded. At the end of the day, Carlson advised him the trailer wouldn't be loaded that day and told him he should go home. Padgett did so, leaving his trailer at the Ace Doran terminal to be loaded. A second trailer owned by him was also at the terminal. We thus have a situation where Padgett was returning home pursuant to Ace Doran's instructions and with the expectation of returning to the Ace Doran terminal to pick up the load.

■ While not controlling, we are also mindful of the ICC regulatory scheme. As indicated in *Schedler*, an authorized carrier must remove any legend or removable device showing it as the operating carrier before relinquishing possession of equipment. In *Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535, 394 N.E.2d 1179, removable panels were provided to conceal the name of a certified interstate motor carrier. An accident occurred while the panels had not been attached and no sign-off (see 49 C.F.R. sec. 1057.4(b)) was effected. The court concluded:

> "Under *Schedler*, it is not necessary to decide the troublesome agency questions such a 'employee or independent contractor,' 'scope of employment,' 'frolic or detour,' and 'borrowed employees' in determining liability. It is necessary only to consider the simple question of whether the lease had been terminated and possession surrendered in the manner provided in the regulations; that is, by the lessee taking a receipt from the owner (sec. 1057.4(b)) and by removing from the vehicle the lessee's identification showing it to be the operating carrier (sec. 1057.4(d)(1). *** When the lessee takes possession under the lease and places its identification on the equipment as re-

quired by section 1057.4(d), the provisions of the ICC regulations place upon the lessee exclusive *possession* and complete *responsibility*, which remain until possession is surrendered and the identification legend of the lessee-carrier is removed. The lessee-carrier, by entering into the lease and placing its identification on the vehicle, has vested the owner-lessor with authority to transport commodities in that vehicle in interstate commerce. That authority continues during the duration of the lease, until possession is surrendered and the identification removed. Likewise, the responsibility of the lessee who vested the owner-lessor with this authority must remain until possession is surrendered in the manner provided in the regulations. [Citation.]" (*Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535, 540-41, 394 N.E.2d 1179, 1181-82.) At the time of the accident at bar, Ace Doran's name and permit number were on Padgett's tractor.

■ It is clear that under the ICC regulatory scheme Padgett was "in the business" of Ace Doran; indeed, the carrier has never contested its potential liability. The facts of this case further present a situation where a lessor was directed to return home by a lessee-carrier and intended to return after a holiday without carrying any other loads in the interim. While there may be cases where a certified carrier's liability and an "in the business" characterization may not be coextensive, the facts at bar indicate such a relationship herein. We therefore hold that Padgett was "in the business" of Ace Doran at the time of the accident, and that the incident thus falls within plaintiff's policy exclusion.

■ Defendants have raised several additional issues, the discussion of which is unnecessary to the resolution of this cause. We do note that they have contended the determinative issue should be decided under Indiana law. Given our reliance on Federal law, as well as the place of performance, the location of the subject matter, and the place bearing a relationship to the general contract (see *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 528-29, 322 N.E.2d 454, 458), we find the trial court committed no error in deciding the issue under the law of this State.

Accordingly, the summary judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, P.J., and SCOTT, J., concur.