# Illinois Official Reports

---

***Mt. Hawley Insurance Co. v. Certain Underwriters at Lloyd's, London***,
**2014 IL App (1st) 133931**

---

| | |
|---|---|
| Appellate Court Caption | MT. HAWLEY INSURANCE COMPANY, Plaintiff-Appellee, v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Defendant-Appellant (Western World Insurance Company; 311 Lincolnway Properties, LLC; 311 Builders, Inc.; G.L. Schmitz and Company; C&M Interior Demolition; and Toji Engineering, Ltd., Defendants). |
| District & No. | First District, Second Division<br>Docket No. 1-13-3931 |
| Filed | September 9, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the insurance coverage for personal injuries suffered in an accident at a construction site, the trial court properly entered summary judgment in favor of the insurer of the owner of the property involved and the general contractor on the project, who were named as defendants in the underlying action, and against the insurer that issued a policy to a subcontractor naming the owner and general contractor as additional insureds, notwithstanding defendant insurer's contention that under the vicarious liability doctrine, liability could not be imposed on defendant insurer for the additional insureds when the insured subcontractor was found not liable and was awarded summary judgment in the underlying negligence action, since the vicarious liability defense raised by defendant insurer was a "policy defense" that defendant could not raise after it wrongfully denied their tender of defense by failing to defend the underlying suit under a reservation of rights or seeking a declaratory judgment that there was no coverage, and defendant had a duty to indemnify the additional insureds for the amount they paid in the underlying personal injury suit. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-13946; the Hon. David B. Atkins, Judge, Presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Novak Law Offices, of Chicago (Neal R. Novak and Colleen M. Costello, of counsel), for appellant. |
| | Tressler LLP, of Chicago (Michael J. Duffy and Elizabeth M. McGarry, of counsel), for appellee. |
| Panel | JUSTICE LIU delivered the judgment of the court, with opinion. Justices Harris and Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1 This appeal involves an insurance coverage dispute between plaintiff, Mt. Hawley Insurance Company (Mt. Hawley), and defendant, Certain Underwriters at Lloyd's, London (Underwriters). Mt. Hawley brought a declaratory judgment action against Underwriters, seeking a declaration that Underwriters owed a duty to defend and indemnify certain parties named as defendants in a personal injury suit, as additional insureds under a commercial general liability (CGL) policy issued by Underwriters. Cross-motions for summary judgment were subsequently filed by the parties. The circuit court entered summary judgment in favor of Mt. Hawley, finding that, as a matter of law, Underwriters was estopped from raising a policy defense to coverage after it refused to defend its additional insureds under a reservation of rights or to seek a declaratory judgment on coverage. On appeal, Underwriters argues that the circuit court erred in its ruling, because under the vicarious liability doctrine, liability cannot be imposed on Underwriters for its additional insureds, where the named insured was found not liable and awarded summary judgment in the underlying negligence suit. Underwriters also contends that its vicarious liability defense is not a "policy defense" for purposes of the estoppel doctrine in this case. For the following reasons, we affirm.

¶ 2 BACKGROUND

¶ 3 A. The Parties

¶ 4 311 Lincolnway Properties, LLC (311 Lincolnway), and 311 Builders, Inc. (311 Builders) (collectively, the 311 Entities), were defendants in a personal injury lawsuit brought by Gregory Hillesheim, following an accident at the site of a construction project. 311 Lincolnway is the owner of the property, and 311 Builders was the general contractor of the construction project.

¶ 5 Toji Engineering, Ltd. (Toji), was a subcontractor hired by 311 Builders to perform work on the project.

¶ 6        Underwriters is an insurer that provided coverage to Toji, as the named insured, under the CGL policy (the Policy) at issue in this case. The 311 Entities are named as "additional insureds" in the Policy.

¶ 7        Mt. Hawley is an insurer that provided coverage to the 311 Entities as its named insureds under a separate CGL policy.

¶ 8                                    B. The Policy

¶ 9        Underwriters issued the Policy to Toji, as the named insured, for the period of May 18, 2007, to May 18, 2008. The Policy contained an additional insured endorsement, which provided for the inclusion of coverage for the 311 Entities under the Policy. The relevant portion of the endorsement stated:

"**A. Section II–Who Is An Insured** is amended to included as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:

Your acts or omissions; or

The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above."

¶ 10                          C. Hillesheim's Personal Injury Lawsuit

¶ 11       On June 3, 2009, Gregory Hillesheim filed a personal injury lawsuit, alleging that he was seriously injured at the construction site on April 23, 2008, when his foot struck a protruding wall bracket (the Hillesheim Lawsuit). The 311 Entities and Toji were named as defendants in this suit, along with other subcontractors and entities involved in the project. Hillesheim alleged that 311 Builders had subcontracted certain work to Toji, Armando's Hauling (Armando's), and C&M Interior Demolition. Toji had also allegedly subcontracted some of its work to other parties.

¶ 12       On March 23, 2010, the 311 Entities advised Underwriters, Toji's insurer, of the Hillesheim Lawsuit and tendered their defense and indemnity. Four months later, Underwriters responded that it would not defend or indemnify the 311 Entities in the personal injury case, because the underlying complaint failed to allege that either 311 Lincolnway or 311 Builders was vicariously liable for the acts or omissions of Toji or parties acting on Toji's behalf. Mt. Hawley, which had issued a separate policy to the 311 Entities, proceeded to undertake the defense of the 311 Entities in the case.

¶ 13       On May 17, 2011, almost 14 months after the 311 Entities tendered their defense to Underwriters, Toji filed a motion for summary judgment in the Hillesheim Lawsuit. Toji argued that Hillesheim's injuries resulted from "a trip and fall over a bracket that remained affixed to a hallway wall after a 311 Builder's subcontractor (Armando's Hauling and C&M) performed the radiator/bracket demolition and removal work." Toji asserted that it had no involvement in creating the condition that caused Hillesheim's injuries and that it owed no duty to Hillesheim because it "did not sufficiently control the operative details of [Hillesheim's] work." On July 27, 2011, the circuit court entered an order granting summary judgment in favor of Toji. The court included a finding under Illinois Supreme Court Rule

304(a) (eff. Feb. 26, 2010) that there was no just reason to delay enforcement of the order. No appeal of this ruling was made by any party in the lawsuit.

¶ 14    On February 15, 2012, the 311 Entities asked Underwriters to reconsider its decision to deny them coverage as additional insureds under the Policy. Underwriters again denied the tender by the 311 Entities. The remaining parties settled the Hillesheim Lawsuit on July 16, 2012. Mt. Hawley paid $325,000 to settle the claims against the 311 Entities and eventually recovered $150,000 of that amount through claims against other parties.

¶ 15                          D. Mt. Hawley's Declaratory Judgment Action

¶ 16    On April 16, 2012, Mt. Hawley filed the instant declaratory judgment action. In its complaint, Mt. Hawley alleged that Underwriters had a duty to defend and indemnify the 311 Entities in the Hillesheim Lawsuit and that it breached this duty. According to Mt. Hawley, the 311 Entities had properly tendered their defense, but Underwriters wrongfully refused to defend them in the Hillesheim Lawsuit. Consequently, beginning in August 2009, Mt. Hawley had undertaken the 311 Entities' defense without participation from any other insurer. Mt. Hawley claimed that it had incurred costs for this defense and that it was contractually subrogated to the rights of the 311 Entities against Underwriters for those costs.[1]

¶ 17    On October 24, 2012, Underwriters filed an answer and counterclaim for declaratory judgment. Underwriters alleged that the 311 Entities had waived their right to seek coverage under the Policy, or alternatively were estopped from seeking coverage, because they had failed to tender the second amended complaint. Underwriters alleged that the 311 Entities also did not qualify as additional insureds under the Policy because the second amended complaint did not allege any facts triggering potential coverage. Finally, Underwriters alleged that "the 311 Entities' potential exposure to any liability caused by Toji or on its behalf [was] extinguished" by the time the 311 Entities renewed their tender in 2012. Underwriters ultimately asserted that it had "no duty to defend or to indemnify the 311 Entities in the *Hillesheim* suit." (Emphasis in original.)

¶ 18    On September 12, 2012, Mt. Hawley moved for summary judgment against Underwriters. Mt. Hawley argued that Underwriters had a duty to defend the 311 Entities because the allegations in the Hillesheim Lawsuit established the potential for coverage under the additional insured endorsement of the Policy. Mt. Hawley requested reimbursement of the money it had paid to indemnify the 311 Entities in the Hillesheim Lawsuit. It also argued that Underwriters was estopped from relying on any defenses to coverage as a result of its wrongful refusal to defend the 311 Entities in the suit.

¶ 19    On January 23, 2013, Underwriters filed a cross-motion for summary judgment. Underwriters maintained that it had no duty to defend the 311 Entities because "there [we]re no allegations of vicarious liability caused by Toji's acts or caused by those acting on Toji's behalf" so as to trigger the potential for coverage under the additional insured endorsement of the Policy. Underwriters also cited the favorable summary judgment ruling obtained by Toji, arguing that "*Toji* can never be liable to *Hillesheim* and thus there is not even the potential for liability of the 311 Entities based on *Toji's* conduct or those acting on its behalf." (Emphases in original.)

---

[1]There is no dispute over Mt. Hawley's standing to bring the instant action.

- 4 -

¶ 20    On April 18, 2013, the circuit court entered summary judgment in favor of Mt. Hawley and against Underwriters. The court found that the allegations in the complaint and amended complaints filed in the Hillesheim Lawsuit potentially fell within the Policy's coverage and thus triggered Underwriters' duty to defend the 311 Entities as additional insureds. The court also found that Underwriters had wrongfully denied the tender of defense by the 311 Entities and that it was therefore estopped from asserting policy defenses to indemnification. Underwriters was ordered to reimburse Mt. Hawley for the costs of defending and indemnifying the 311 Entities.

¶ 21    Underwriters filed a motion for reconsideration, arguing that the court erred by ordering it "to pay an amount they were not otherwise obligated to pay as a matter of law." Underwriters maintained that the summary judgment ruling in the Hillesheim Lawsuit had "extinguished" Toji's potential duty to indemnify the 311 Entities, because it "conclusively established that any liability exposure facing the 311 Entities [related to the settlement] in July 2012 was not attributable to the acts or omissions of Toji, or those working on Toji's behalf." Further, Underwriters challenged the court's holding that it had asserted a "policy defense" in the declaratory judgment action and argued that "the estoppel doctrine cannot create coverage where none exists."

¶ 22    The court denied the motion for reconsideration. In rejecting "Underwriters' attempt to repackage what is clearly a policy defense," the court stated:

> "[T]his is not a case where the application of estoppel creates additional liability or increases coverage beyond what was bargained for. Rather, the Policy clearly contemplates indemnity for the 311 Entities, and the additional liability was undoubtedly reflected in Toji's insurance premiums. Due to Underwriters['] unjustified refusal to honor its own contractual obligations, it is now within the court's power to require Underwriters to reimburse the 311 Entities for damages arising therefrom, including *** settlement terms that would otherwise fall within policy coverage."

¶ 23    On October 30, 2013, the court entered a monetary judgment against Underwriters in the amount of $334,848.33, which included $175,000 in indemnity for settlement of the Hillesheim Lawsuit. The court included a finding under Rule 304(a) that there was no just reason for delaying enforcement or appeal of the order.

¶ 24    Underwriters filed an appeal bond and agreed to partially satisfy the judgment in the amount of $277,642.35, *i.e.*, the amount awarded as defense costs. Underwriters appeals from only the indemnification portion of the circuit court's judgment, which amounted to $185,094.90 with prejudgment interest.

¶ 25                                                    ANALYSIS

¶ 26    Underwriters concedes, for purposes of this appeal, that it had a duty to defend the 311 Entities in the Hillesheim Lawsuit, that it wrongfully denied their tender of defense, and that it is estopped from asserting policy defenses to indemnification. Underwriters maintains, however, that it has no duty to indemnify the 311 Entities because Toji was found not liable for any negligence in the Hillesheim Lawsuit by virtue of the summary judgment ruling in its favor.

¶ 27　　　The issue presented for our review is a question of law: whether Underwriters' defense that it owes no duty to indemnify the 311 Entities under the Policy, because Toji was awarded summary judgment and found not liable in the Hillesheim Lawsuit, constitutes a "policy defense" that triggers the estoppel doctrine. We answer this question in the affirmative.

¶ 28　　　Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). We review *de novo* the circuit court's ruling on a motion for summary judgment. *Tunca v. Painter*, 2012 IL App (1st) 110930, ¶ 13.

¶ 29　　　Under Illinois law, "[a]n insurer that believes an insured is not covered under a policy cannot simply refuse to defend the insured." *A-1 Roofing Co. v. Navigators Insurance Co.*, 2011 IL App (1st) 100878, ¶ 20 (citing *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999)). Instead, it must either: (1) defend the suit under a reservation of rights, or (2) seek a declaratory judgment that there is no coverage. *Ehlco*, 186 Ill. 2d at 150. "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Id.* at 150-51.

¶ 30　　　"[The] roots [of estoppel] lie in the theory that because the insurer breached one of its duties under the contract of insurance (of which the putative insured is an intended third-party beneficiary), the insurer cannot later turn around and enforce another clause of the contract, to its complete protection." *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 479 (1981). "The court will not enforce the insurer's protections under the policy where the insurer failed to act equitably, that is, failed to defend under a reservation of rights or to bring a declaratory judgment action to determine whether there was coverage under the policy." *Id.*

¶ 31　　　In the case at bar, the circuit court concluded that Underwriters wrongfully rejected the 311 Entities' tender of defense in the Hillesheim Lawsuit. Therefore, the court ruled, Underwriters was estopped from raising policy defenses to coverage, including the defense that the summary judgment ruling extinguished Toji's duty of indemnification under the Policy.

¶ 32　　　Underwriters contends on appeal that the court erroneously characterized its noncoverage defense as a "policy defense" subject to estoppel. It claims that its proposed noncoverage defense is distinguishable from a policy defense because it is based on "the law of the case in the *Hillesheim* Action and not on The Policy's limitations, conditions or exclusions."

¶ 33　　　Underwriters cites *Platinum Technology, Inc. v. Federal Insurance Co.*, 282 F.3d 927 (7th Cir. 2002), and *Santa's Best Craft, LLC v. St. Paul Fire & Marine Insurance Co.*, 611 F.3d 339, 352 (7th Cir. 2010), in support of its argument. In *Platinum*, the defendant, an insurance company, argued on appeal that a settlement negotiated by its insured was unreasonable because it included the purchase of a trademark. *Platinum*, 282 F.3d at 931. The plaintiff, the insured, responded that the insurance company's argument was a policy defense and thus barred under the lower court's finding of estoppel. *Id.* The appeals court noted that "[t]hough policy defenses are barred at this stage, other considerations and defenses arise where a settlement is involved because there is 'the additional concern that the settlement was entered into in order to obtain insurance coverage for an otherwise uninsurable claim.' " *Id.* (quoting *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 625 (1994)). The court stated: "For instance, a defendant may raise the defense that the policy was not in effect

- 6 -

when the injury occurred or that the policy does not cover the type of damages sustained, as when compensatory but not punitive damages are covered." *Id.* at 931-32.

¶ 34 Underwriters gleans from the *Platinum* decision that the Seventh Circuit "concluded that whether there was indemnity coverage under an insurance policy for a settlement was *not* a policy defense." (Emphasis in original.) It additionally cites the proposition, stated in *Santa's Best*, that "it is inequitable to require an insurer to pay for a settlement that is clearly not within the terms of its policy." *Santa's Best*, 611 F.3d at 352. Underwriters argues that "[b]y requiring Underwriters to indemnify the 311 Entities where Underwriters' named insured was found not liable, the Circuit Court has, in effect, increased coverage afforded under The Policy."

¶ 35 Underwriters' reliance on *Platinum* and *Santa's Best* is misplaced. *Platinum* is distinguishable from the case at bar because it centered on a dispute over the reasonableness of a settlement, an issue which has not been raised here. While the court in that case implied that it is not a policy defense to argue that a policy does not cover the type of damages sustained, it referred specifically to compensatory and punitive damages and did not go so far as to conclude, as Underwriters claims, "that whether there was indemnity coverage under an insurance policy for a settlement was *not* a policy defense." (Emphasis in original.) The Seventh Circuit's statement in *Santa's Best*, moreover, has no application under these circumstances. A "basic maxim of equity [is] that he who seeks equity must do equity." *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009). Here, the reason Underwriters is estopped from asserting policy defenses to coverage under the Toji policy is that it did not fulfill its duty to defend the 311 Entities. In light of Underwriters' wrongful conduct in this case, the doctrine of unclean hands precludes Underwriters from asserting its own equitable argument. See *id.* (noting that "[t]he doctrine of 'unclean hands' precludes a party from taking advantage of his own wrong").

¶ 36 Two cases from our own court are ultimately far more instructive on the reach of the estoppel doctrine in circumstances such as these: namely, *Korte Construction Co. v. American States Insurance*, 322 Ill. App. 3d 451, 458 (2001), and *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75, 87 (2002). In both, this court has liberally applied the estoppel doctrine to bar even noncoverage defenses, such as the one raised here.

¶ 37 In *Korte*, the plaintiff, a construction manager, brought suit against the defendant, an insurance company, seeking a declaratory judgment that it was covered as an additional insured under a policy and that defendant had a duty to defend and indemnify it in a lawsuit. *Korte*, 322 Ill. App. 3d at 453. The plaintiff, which had been involved in a project to build a new high school, was named in a wrongful death action after a laborer employed by Miller & Maack General Contractors, Inc., was killed setting up an office trailer owned and to be used by the plaintiff. *Id.* An insurance policy issued to Miller & Maack by the defendant named the plaintiff an additional insured " 'with respect to liability arising out of [Miller & Maack's] ongoing operations performed for [Korte].' " *Id.* The plaintiff tendered a defense to the defendant pursuant to the additional insured endorsement; the defendant, however, refused its tender. *Id.* The defendant asserted, as an affirmative defense, that the plaintiff was covered as an additional insured under a different policy, making any coverage that the defendant provided excess based on the language of Miller & Maack's policy. *Id.* at 454. The circuit court ultimately granted summary judgment to the plaintiff, concluding that it was an additional insured under Miller & Maack's policy and that the defendant had a duty to defend and indemnify it in the wrongful death action. *Id.* at 455. The court ruled that "because [the

defendant] failed to defend [the plaintiff] under a reservation of rights or seek a declaratory judgment as to coverage issues, it was estopped from raising policy-defense or noncoverage issues in the declaratory judgment action." *Id.* We affirmed the circuit court's ruling, including its decision to bar the defendant's noncoverage defense, stating:

"When an insured tenders to an insurer the defense of the underlying cause, the insurer may not simply refuse to participate in the litigation of the underlying cause and wait for the insured to institute litigation against the insurer to determine the insurer's respective rights and duties. [Citation.] This is precisely what [the defendant] did in the case at bar. *It is now estopped from raising noncoverage as a defense to [the plaintiff's] action for declaratory judgment and indemnification*." (Emphasis added.) *Id.* at 458.

¶ 38    In *West American*, we again found a noncoverage defense, based on an excess coverage provision, to be subject to estoppel. There, the plaintiff, an insurance company, filed suit against J.R. Construction, seeking a declaration that it had no duty to defend J.R. Construction in a personal injury suit. *West American*, 334 Ill. App. 3d at 79. J.R. Construction, a general contractor, had been sued for negligence by an employee of All Estimating, Inc., a subcontractor of J.R. Construction's own subcontractor, Altra Steel. *Id.* at 78. A certificate of insurance issued by the plaintiff named J.R. Construction as an additional insured to Altra Steel's general liability insurance policy. *Id.* However, there was conflicting opinion as to whether J.R. Construction was actually covered under the Altra Steel policy because a "blanket additional insured endorsement" in the policy established an insured to be, specifically, " 'any person or organization who you are required to name as an additional insured on this policy under a written contract or agreement.' " *Id.* at 80. The plaintiff ultimately rejected J.R. Construction's tender of defense "on the grounds that there was no written contract between J.R. Construction and Altra requiring J.R. Construction to be named an additional insured and the underlying complaint did not seek damages from J.R. Construction for liability arising out of the work of Altra." *Id.* at 79. As pertinent here, the blanket additional insured endorsement contained additional language stating that " '[a]ny coverage provided here under shall be excess over any other valid or collectable insurance available to the additional insured.' " *Id.* at 78.

¶ 39    The parties filed cross-motions for summary judgment on the issue of the duty to defend, and the trial court concluded that "J.R. Construction was an insured under the [plaintiff's] policy and that [the plaintiff] owed a primary duty to defend J.R. Construction in the underlying suit." *Id.* at 79. On appeal, this court agreed that J.R. Construction was a named additional insured under the policy and stated, "because J.R. Construction was an insured under the policy, we find, as the trial court did, that the blanket additional insured endorsement and its exclusions do not apply." *Id.* at 85. This ruling notwithstanding, we concluded that "[e]ven if the exclusions under the blanket endorsement applied, we would still conclude *** that [the plaintiff] is estopped from raising these policy defenses to coverage as a matter of law." *Id.* at 86. As we stated:

"In its letter of November 24, 1997, [the plaintiff] agreed that J.R. Construction was an insured, but stated that its policy was excess. It indicated that another insurance company, Agora, had assumed the defense. Then almost two years later, it filed the instant declaratory judgment action. An insurance company cannot 'simply stand on the sidelines' because another insurance company performs its own contractual duties. [Citation.] [The plaintiff's] failure to take the necessary action for 21.5 months from

- 8 -

the time the defense was tendered was unreasonable as a matter of law. *As a result, [the plaintiff] is estopped from raising the policy defenses under the blanket additional insured endorsement and its exclusionary language*." (Emphasis added.) *Id.* at 87.

¶ 40 The dispute before us is similar, in many respects, to *Korte* and *Western American*. Here, Underwriters has wrongfully rejected a tender of defense by its insured, the 311 Entities. Notwithstanding, it asserts a noncoverage defense to avoid indemnifying the 311 Entities–namely, that the 311 Entities are not entitled to indemnification under the Policy because Toji, the named insured, was awarded summary judgment and found not liable in the Hillesheim Lawsuit. The courts in *Korte* and *West American* held that estoppel applied to bar an insurer from claiming that its policy provided only excess coverage to an insured. It follows logically that, if an insurer can be estopped from asserting that it was only liable for excess coverage, it can also be estopped from asserting other defenses regarding the scope of coverage, including the one raised by Underwriters here.

¶ 41 Underwriters ultimately fails to offer any persuasive reason why its proposed defense should not be considered a "policy defense" subject to estoppel. Underwriters seeks to make the point that its defense is "based on the law of the underlying case and not on the application of limiting language in The Policy." Underwriters fails to grasp, however, that its entire argument is based on limiting language in the policy, *i.e.*, the language limiting coverage of the additional insureds to "acts or omissions of those acting on [Toji's] behalf." Ultimately, there is no distinction to be drawn between Underwriters' proposed defense and other policy defenses, all of which have the same substantive effect of denying coverage to an insured based on the terms of the policy. We therefore conclude that the defense asserted by Underwriters, based on the summary judgment ruling in favor of Toji, is a "policy defense" subject to the well-established estoppel doctrine.

¶ 42 CONCLUSION

¶ 43 We find that the circuit court properly applied the estoppel doctrine to bar Underwriters from asserting the "policy defense" that the summary judgment ruling favoring Toji in the Hillesheim Lawsuit extinguished any duty of Toji to indemnify the 311 Entities under the terms of the Policy. We therefore affirm the order of the circuit court of Cook County granting Mt. Hawley's motion for summary judgment and denying Underwriter's cross-motion for summary judgment.

¶ 44 Affirmed.