In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 14-2694

NATIONAL AMERICAN INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

ARTISAN AND TRUCKERS CASUALTY COMPANY,

*Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CV 1290 — **Michael T. Mason**, *Magistrate Judge*.

_____

ARGUED DECEMBER 9, 2014 — DECIDED AUGUST 6, 2015

_____

Before POSNER, RIPPLE, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. This case provides a warning for insurance companies who refuse to defend their insureds. On August 23, 2010, Viktor Barengolts was driving a tractor-trailer on Route 30 in Wheatland Township, Illinois. That same day, on that same road, Gustavo and Maria Bernal were driving in their pickup truck. Their fates joined when Barengolts's tractor-trailer rear-ended the Bernals' truck. Se-

rious injuries and property damage resulted. The Bernals sued.

Whom did they sue? Smartly, everyone. In their Second Amended Complaint, the Bernals first sued Unlimited Carrier—the company whose placard appeared on the tractor at the time of the accident—and Viktor Barengolts, the apparent driver.[1]

They next sued, in counts 3 through 4, Unlimited Carrier and Eduard Gaidishev. Gaidishev was in the tractor with Barengolts during the accident. At the time the Bernals filed their complaint, it was unclear whether Gaidishev had been the driver instead of Barengolts.

Notably, in each of these first four counts, the complaint alleged an agency relationship with either Viktor Barengolts or Eduard Gaidishev as the agent and Unlimited Carrier as the principal.

Counts 5 through 8, by contrast, alleged an agency relationship with Michael Barengolts, Viktor's father, who owned the tractor.

---

[1] Count 1 accounted for Gustavo's injuries and Count 2 accounted for Maria's injuries. The Bernals replicated this one-two step throughout their complaint, which alleged eight counts in total.

Specifically, counts 5 and 6 alleged that "Viktor Barengolts was operating a tractor … as the agent and/or servant of Michael Barengolts[.]" Thus, in these counts, Michael Barengolts, not Unlimited Carrier, was the alleged principal.

Counts 7 and 8 replicated this theory with one change: they alleged Gaidishev rather than Viktor Barengolts was operating the tractor.

In summary, these latter counts ostensibly pled vicarious liability with either Viktor Barengolts or Eduard Gaidishev as the agent and Michael Barengolts as the principal. These counts also stated that "[a]t all times relevant … Unlimited Carrier exercised authority and control" over the tractor. We'll return to this point later.

As soon as Viktor learned of the Bernals' lawsuit, he contacted Appellant Artisan and Truckers Casualty Company ("Artisan"), his insurance provider, to determine coverage. Artisan denied him coverage. It told Viktor that the policy's Contingent Liability Endorsement ("CLE") excluded coverage because he was driving the tractor on behalf of Unlimited Carrier at the time of the accident.

Some background. Artisan Policy 07572918-0 lists Viktor as an insured and Michael as an additional insured. So they ordinarily should be covered under the policy. Michael's tractor is also covered; it is included in the "auto coverage schedule" in the policy agreement. At first blush, then, it would appear that Artisan was on the hook to cover and defend the Barengolts against the Bernals' lawsuit.

Indeed, Artisan expressly agreed to "pay damages … for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsi-

ble because of an accident arising out of the ownership, maintenance or use of an insured auto."

But not so fast, says Artisan. It points to the CLE, which states:

> Except as specifically modified in this Endorsement, all provisions of the Commercial Auto Policy Apply.
>
> …
>
> Liability coverage for an insured auto described in the Declarations is changed as follows:
>
> 1. These coverages do not apply when the insured auto is being operated, maintained or used for or on behalf of anyone else or any organization whether or not for compensation.

Because the tractor displayed placards for Unlimited Carrier at the time of the accident, Artisan construed it as being "used for or on behalf of" Unlimited Carrier—an organization, and a use, not covered by the policy. So Artisan refused to defend Viktor and Michael Barengolts against the lawsuit.

For example, counsel for Unlimited Carrier wrote to Artisan on January 7, 2011, demanding that it defend Viktor and Michael. Artisan refused. On April 8, 2011, counsel for the Barengoltses tendered the defense to Artisan. Counsel also requested the evidence on which Artisan based its decision to deny coverage. Artisan refused to defend and refused to offer any such evidence. Counsel for the Barengoltses again wrote to Artisan, this time on August 18, 2011. That letter also provided notice that counsel would seek reimbursement from Artisan for defense costs, attorney's fees, and any money judgments stemming from the lawsuit. Artisan once again refused.

Then Viktor and Michael exposed a fact that they thought could change Artisan's decision: Michael Barengolts, the owner of the tractor, did not actually sign a lease with Unlimited Carrier for use of the tractor until eight days after the accident. To be sure, the placard for Unlimited Carrier was displayed on the tractor at the time of the accident. But the absence of the signature on the lease agreement seemed to at least create a question as to whether Artisan should cover Viktor and Michael for the Bernals' lawsuit. Consequently, on February 17, 2012, counsel for the Barengoltses sent another letter to Artisan, again tendering the defense and seeking indemnity for Viktor and Michael. Counsel enclosed a copy of the lease agreement with the letter. Artisan, unflappable, said the lease issue did not change its position with respect to the CLE. It again refused to defend.

While Artisan was busy refusing to defend, Appellee National American Insurance Company ("NAICO") was busy defending. It had issued a policy to Unlimited Carrier on December 7, 2009, and that policy was in effect on the date of the accident. Interestingly, besides covering and defending Unlimited Carrier, NAICO also agreed to defend Viktor and Michael Barengolts. Its policy with Unlimited Carrier stated that it would cover "[a]nyone … while using with your permission a covered 'auto' you own, hire, or borrow[,]" subject to some exceptions. The NAICO policy further provided coverage for an "agent or driver of the lessor [of a covered 'auto'] while the 'auto' is leased to you under a written agreement[,]" subject to some conditions. Perhaps recognizing some uncertainty regarding application of the policy, NAICO defended Viktor and Michael under a reservation of rights. But defend it did.

The case ultimately settled at mediation on November 1, 2012. Pursuant to the settlement agreement, NAICO paid $50,000 to Gustavo Bernal and $48,750 to Maria Bernal on behalf of Viktor and Michael Barengolts, Eduard Gaidishev, and Unlimited Carrier. Also in accordance with the settlement agreement, Viktor and Michael assigned to NAICO their rights to recover under the Artisan Policy.

That assignment brings us, finally, to this lawsuit. On February 19, 2013, NAICO filed a four-count complaint against Artisan in the Northern District of Illinois. In count 1, NAICO sought a declaratory judgment against Artisan, asserting that: (1) Artisan had a duty to defend and indemnify Viktor and Michael in the Bernal case; (2) Artisan breached that duty; and (3) Artisan is now estopped from raising policy defenses to its duty to defend and indemnify Viktor and Michael. Counts 2 and 3 raised claims of equitable and contractual subrogation, respectively, and Count 4 sought equitable contribution.

NAICO's complaint alleged facts it uncovered during its discovery in the Bernal case. First and foremost, NAICO alleged that Viktor Barengolts "was not under dispatch or in the process of picking up a load" for Unlimited Carrier at the time he hit the Bernals, implying he was not in the course of some purported agency relationship. Second, and as we noted above, Michael Barengolts did not sign an equipment lease with Unlimited Carrier until August 31, 2010—eight days after the accident. The day after Michael signed the lease, Viktor signed his remaining employment documents. And finally, in light of the outstanding paperwork, Viktor and Michael did not have authority to display the Unlimited Carrier placard on the trailer until September 1, 2010.

More important, NAICO's complaint alleged that Artisan's duty to defend sprang from counts 5 through 8 in the Bernals' underlying complaint. Recall those counts pled vicarious liability with Michael Barengolts named as the principal—not Unlimited Carrier. And if Michael Barengolts was the principal, then Artisan's duty to defend would be triggered. *See Menard, Inc. v. Country Preferred Ins. Co.*, 992 N.E.2d 643, 648 (Ill. App. Ct. 2013) (holding duty to defend applies when "the underlying complaint alleges facts that fall within, or potentially within, the policy's coverage").

Consistent with its approach in the underlying action, Artisan denied all liability in its Answer. It then filed a counterclaim seeking a declaratory judgment that it owed nothing for the Bernals' settlement. NAICO eventually filed a motion for summary judgment regarding (1) Artisan's duty to defend and indemnify Viktor and Michael, and (2) application of estoppel. Artisan responded, and then filed a cross-motion for summary judgment.

The parties consented to dispositive proceedings before U.S. Magistrate Judge Michael T. Mason. On May 15, 2014, Magistrate Judge Mason found that Artisan had a duty to defend against the Bernals' lawsuit, and that it breached that duty. *Nat'l Am. Ins. Co. v. Progressive Corp.*, 43 F. Supp. 3d 873, 888 (N.D. Ill. 2014). Given the breach, Judge Mason estopped Artisan from asserting defenses under its policy with Viktor and Michael Barengolts, and granted summary judgment (with reimbursement and costs) in favor of NAICO. *Progressive Corp.*, 43 F. Supp. 3d at 888.

Artisan appeals that decision. In its statement of the issues, it challenges Judge Mason's ruling regarding its duty to

defend and indemnify. It also challenges the estoppel ruling.[2]

Artisan argues that it had no duty to defend Viktor and Michael because, even if one assumes counts 5 through 8 sufficiently pled Michael as vicariously liable for the accident, those same counts also pled that Unlimited Carrier "exercised authority and control" over the tractor. In its view, that fact meant that the tractor was used for, or on behalf of, Unlimited Carrier—an exclusion contemplated by the CLE. Michael Barengolts's agency relationship to the driver, Artisan concludes, is therefore immaterial to the outcome of ultimate liability and coverage.

We review a district court's grant of summary judgment *de novo*. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A fact is "material" if it is one identified by the law as affecting the outcome of the case. *Anderson*

---

[2] Artisan does not challenge the reasonableness of the settlement agreement or the calculation of reimbursement to NAICO, which totaled $140,154.04. It focuses instead on its alleged duty to defend, understanding the disposition of that claim impacts whether it must reimburse NAICO for defense and indemnification costs in the underlying action.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. We "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). On cross-motions for summary judgment, we draw inferences "in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008).

In diversity cases, we apply federal procedural law and state substantive law. *Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Questions of insurance-policy interpretation are substantive. *Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1157 (7th Cir. 1993). So our interpretation of this insurance policy must be according to state law. Both parties agree that the applicable state law is the law of Illinois.

Under Illinois law, courts liberally construe both the terms of an insurance policy and the allegations in the underlying complaint in favor of the insured. *State Farm Fire & Cas. Co. v. Perez*, 899 N.E.2d 1231, 1235 (Ill. 2008) ("[A]ny doubts and ambiguities are resolved against the insurer."). An insurer's duty to defend is broad; it exists when a complaint alleges facts that are "potentially within" the scope of the insurance policy's coverage. *Menard*, 992 N.E.2d at 648. With these principles, we turn to the facts at bar.

Counts 1 through 4 allege that either Viktor Barengolts or Eduard Gaidishev "was operating the tractor … as an agent and/or employee of Unlimited Carrier." If these counts represented the entirety of the Bernals's underlying

complaint, we think Artisan would be on a solid footing. For the CLE excludes coverage "when the insured auto is being operated, maintained or used for or on behalf of anyone else," (i.e., an uninsured) or an organization such as Unlimited Carrier.

But the complaint has four other counts. Those counts allege that either Viktor Barengolts or Eduard Gaidishev "was operating the tractor as the agent and/or servant of Michael Barengolts." Michael Barengolts is an additional insured under the Artisan policy. So is the subject tractor, for that matter. Under the theory pled in counts 5 through 8, then, we agree with the district court these allegations "potentially fall within the scope of coverage." *Nat'l Am. Ins. Co.*, 43 F. Supp. 3d at 882. They name an insured as the principal, which is enough to establish a theory of vicarious liability.

Importantly, it does not matter that some of the counts fall within Artisan's exclusion. In *Md. Cas. Co. v. Peppers*, 355 N.E.2d 24 (Ill. 1976), the Supreme Court of Illinois addressed a three-count complaint that alleged some theories that were covered by a policy and some theories that were not. The court found the insurance company had a duty to defend the lawsuit despite the presence of a proscribed theory of recovery. *Peppers*, 355 N.E.2d at 28 ("This duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be."). That is what happened here.

Additionally, we note that counts 5 through 8 are consistent with the Illinois presumption that the driver of a vehicle is an agent of the vehicle's owner. *Bell v. Reid*, 454

N.E.2d 1117, 1119 (Ill. App. Ct. 1983). Although that presumption is rebutted where the owner has leased the vehicle to a third party who then provides it to a driver, *Gann v. Oltesvig*, 491 F. Supp. 2d 771, 775 (N.D. Ill. 2007), here it is undisputed that the lease was not signed at the time of the August 23, 2010, accident.

Nevertheless, Artisan seeks refuge in the additional allegations found in counts 5 through 8. Recall that after describing the agency relationship with the principal, Michael Barengolts, these counts then stated that "Unlimited Carrier exercised authority and control over" the tractor. In Artisan's view, this language trumps any liability of Michael Barengolts because it evokes the federal scheme of placard liability. Artisan argues that insurance should cover the party who is "ultimately liable," and that ultimate liability is determined by whose placard appeared on the vehicle. Because Unlimited Carrier's placard appeared on Michael Barengolts's tractor here, it is ultimately liable for the accident. And if Unlimited Carrier is ultimately liable, Artisan concludes, it had no duty to defend the Barengolts. We reject this argument.

Artisan treats the duty to defend as if it were coterminous with the duty to indemnify. Significantly, the duty to defend is far broader than the duty to indemnify. *Transcontinental Ins. Co. v. Nat'l Union Fire Ins. Co.*, 662 N.E.2d 500, 508 (Ill. App. Ct. 1996). Under Illinois law, "the duty of an insurance company to defend against a suit against its insured is determined by the allegations of the complaint in that suit rather than by what is actually proved[.]" *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1073 (7th Cir. 2004) (citing *Dixon Distrib. Co. v. Hanover Ins. Co.*, 641 N.E.2d 395,

398 (Ill. 1994)) (emphasis added) (additional citations omitted).

By contrast, the duty to indemnify is determined once liability has been affixed. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992). While Artisan's concept of "ultimate liability" may translate to its duty to *indemnify* the Barengolts, it has no application to its *duty to defend* them. The pleadings, together with the terms of the policy, determine that duty. *L.A. Connection v. Penn-Am. Ins. Co.*, 843 N.E.2d 427, 430 (Ill. App. Ct. 2006).

Second, the overarching purpose of placard liability[3] is to provide an injured party with a quickly "identifiable and financially accountable source of compensation." R. Clay Porter & Elenore Cotter Klingler, *The Mythology of Logo Liability: An Analysis of Competing Paradigms of Lease Liability for Motor Carriers*, 33 Transp. L.J. 1, 7 (2005) (quoting *Carolina Cas. Ins. Co. v. Ins. Co. of N. Am.*, 595 F.2d 128, 137 (3d Cir. 1979)). Sometimes called "logo liability," this doctrine "hold[s] federally authorized carriers … that are licensed by the United States Department of Transportation (USDOT) and display their USDOT certificate number on their trucks,

---

[3] Placard liability finds its roots in the Interstate Commerce Act, *as amended by* Pub. L. No. 84-957, *reprinted in* 1956 U.S.C.C.A.N. 1163.

vicariously liable for the negligence of drivers operating under a lease." *U.S. Bank v. Lindsey*, 920 N.E.2d 515, 525 (Ill. App. Ct. 2009) (citations omitted).

But placard liability is not exclusive. Just because a plaintiff can quickly identify and sue the company whose placard appeared on the vehicle that struck him does not mean that the same plaintiff cannot sue—and recover from—others who may also be at fault. The placard is a good starting point for a plaintiff, *see Great W. Cas. Co. v. Nat'l Cas. Co.*, 53 F. Supp. 3d 1154, 1179 (D.N.D. 2014) (noting the regulatory scheme does not "supplant, diminish, or otherwise provide safe harbor from existing tort liability of carriers and lessor-operators under state law"), and we have no doubt that in many cases it may also be the ending point. But whatever the case may be, plaintiffs are free to raise claims against other alleged tortfeasors, be they joint or solo, and if those claims raise a possibility for coverage under a policy, then insurance companies deny coverage at their "peril." *Peterson Sand & Gravel v. Md. Cas. Co.*, 881 F. Supp. 309, 313 (N.D. Ill. 1995).

To the extent that Artisan suggests placard liability is the sole means of recovery for plaintiffs like the Bernals, we disagree. The case it advances for this proposition, *Occidental Fire & Cas. Co. v. Padgett*, 446 N.E.2d 937 (Ill. App. Ct. 1983), expressly states that the federal regulatory scheme (i.e., placard liability) is "not controlling." *Id.* at 940. What is more, that case does not discuss the duty to defend as it relates to allegations pled in a complaint. Artisan's reliance on *Occidental*, therefore, is misplaced.

Artisan's remaining point that Unlimited Carrier's "authority and control over" the tractor somehow renders

the agency relationship with Michael Barengolts immaterial is unavailing. The terms of the CLE do not exclude coverage when a person or organization exercises "authority and control over" the tractor. Instead, the CLE excludes coverage when the tractor "is being operated, maintained or used for or on behalf of" an uncovered person or any organization. This distinction is important at the duty to defend stage, because it suggests at minimum a possibility that the accident was within the scope of the policy's coverage. And that puts Artisan on notice. Assuming for the sake of argument that the language regarding "authority and control" muddled the vicarious liability alleged against Michael Barengolts, the liberal construction mandate applies and weighs in favor of defending Viktor and Michael. *Perez*, 899 N.E.2d at 1235. Context shows these counts were plainly different from the first four, which expressly alleged vicarious liability against Unlimited Carrier.

In sum, Artisan had a duty to defend. By repeatedly refusing to defend Michael and Viktor Barengolts against the Bernals' lawsuit, Artisan breached that duty. Artisan's other arguments to the contrary are without merit.

That brings us to the doctrine of estoppel. Once a complaint is filed against an insured like Viktor or Michael Barengolts, and that complaint alleges claims that may fall within the scope of policy coverage, an insurer (such as Artisan) refusing coverage faces three courses of action: (1) defend the lawsuit under a reservation of rights like NAICO did here; (2) seek a declaratory judgment excluding coverage; or (3) do nothing and refuse to defend. *Peterson Sand & Gravel, Inc.*, 881 F. Supp. at 313. If the insurer does not defend under a reservation of rights or seek a declaratory

judgment, then "it will be estopped from later raising policy defenses to coverage." *State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1231 (Ill. 1999). Estoppel incentivizes action over inaction, which ultimately inures to the benefit of the insured. By defending under a reservation of rights or seeking a declaratory judgment, an insurance company can eliminate the risk of estoppel altogether.

Here, Artisan gambled and lost. It did not defend Michael and Viktor Barengolts under a reservation of rights. And it did not seek a declaratory judgment in the underlying action. Instead, it refused—on at least seven occasions—to defend. Because "[a]n insurer that believes an insured is not covered under a policy cannot simply refuse to defend the insured[,]" *Mt. Hawley Ins. Co. v. Certain Underwriters at Lloyd's*, 19 N.E.3d 106, 111 (Ill. App. Ct. 2014) (quoting *A-1 Roofing Co. v. Navigators Ins. Co.*, 958 N.E.2d 695, 700 (Ill. App. Ct. 2011)), the district court did not err in estopping Artisan from raising policy-coverage defenses. Accordingly, we hold that Artisan is estopped from asserting any coverage defenses under its policy with Michael and Viktor Barengolts. And because it cannot assert such defenses, it must reimburse NAICO the amount authorized by the settlement agreement, including costs for NAICO's efforts in defending and indemnifying Michael and Viktor Barengolts in the Bernals' lawsuit.

The judgment of the district court is AFFIRMED.