# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Progressive Premier Insurance Co. of Illinois v. Emiljanowicz*, 2013 IL App (1st) 113664**

---

| | |
|---|---|
| Appellate Court Caption | PROGRESSIVE PREMIER INSURANCE COMPANY of ILLINOIS, Plaintiff-Appellee, v. KRZYSZTOF EMILJANOWICZ, BARBARA KARAWACKI-HOROWITZ, DAVID HOROWITZ, GEICO a/k/a Geico General Insurance Company, and OCCIDENTAL FIRE AND CASUALTY COMPANY, Defendants (Occidental Fire and Casualty Company, Appellant and Counterplaintiff; v. Progressive Premier Insurance Company of Illinois, Krzysztof Emiljanowicz, Barbara Karawacki-Horowitz, David Horowitz and Geico, a/k/a Geico General Insurance Company, Counterdefendants) |
| District & No. | First District, Second Division<br>Docket No. 1-11-3664 |
| Filed | May 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an accident involving a truck the owner had just leased to a freight company for the transportation of freight pursuant to the company's operating rights, the trial court properly entered summary judgment for the owner's insurance company in its action seeking a declaratory judgment that the freight company's insurance provided coverage, since the freight company had possession and control of the truck at the time of the accident, the truck was being driven to a mechanic at the freight company's directions for an inspection prior to transporting freight, and the truck was a covered "auto" pursuant to the company's policy. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CH-08266; the Hon. Sophia Hall, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Feiereisel & Kasbohm, LLC, of Chicago (Gary M. Feiereisel, of counsel), for appellant. |
| | Magnani & Buck, Ltd., of Chicago (Thomas L. Buck, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion. |
| | Justices Quinn and Connors concurred in the judgment and opinion. |

## OPINION

¶ 1     Appellant Occidental Fire & Casualty Company (Occidental) appeals the order of the circuit court granting plaintiff-appellee Progressive Premier Insurance Company's (Progressive) motion for summary judgment on Progressive's declaratory judgment action. On appeal, Occidental contends (1) genuine issues of material fact exist precluding summary judgment; and (2) if both Occidental's and Progressive's policies apply to the underlying accident, Progressive's policy is primary pursuant to the "other insurance" provisions of the relevant policies. We affirm.

¶ 2                                JURISDICTION

¶ 3     The circuit court granted summary judgment in favor of Progressive. On November 14, 2011, the court entered a judgment in the amount of $480,231.24 in favor of Progressive and against Occidental. Occidental filed a notice of appeal on December 12, 2011. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                BACKGROUND

¶ 5     Defendant Krzysztof Emiljanowicz (Emiljanowicz) owned a 1995 Freightliner truck. On April 21, 2004, Emiljanowicz executed an application of employment with SSTS, Inc. (SSTS), a corporation in the business of transporting freight both interstate and intrastate. SSTS operates under a certificate of public convenience and necessity issued by the Interstate Commerce Commission, and possesses operating rights issued by the state of Illinois. SSTS leases equipment for hauling freight from contractors such as Emiljanowicz.

¶ 6    On May 12, 2004, at 10 a.m., SSTS and Emiljanowicz executed a contractor operating agreement in which Emiljanowicz agreed to lease his freightliner to SSTS for the purpose of hauling freight. In his deposition, the president of SSTS, Alex Sandrzyk, stated that pursuant to the agreement Emiljanowicz would furnish the freightliner "for the exclusive possession, Control and use of" SSTS and "shall transport only freight of" SSTS. As proof SSTS received the freightliner from Emiljanowicz, SSTS issued a signed "Receipt for Possession of the Equipment." The contractor, however, assumed "complete responsibility for the operation of equipment for the duration of this agreement." Sandrzyk stated that it was SSTS policy to require its contractors to have their equipment inspected and serviced by a mechanic before transporting freight for the company. Chris Sandrzyk, Alex's son, signed the agreement on behalf of SSTS. At that time, he instructed Emiljanowicz to have his freightliner inspected by a mechanic.

¶ 7    After execution of the agreement at 10 a.m., SSTS issued decals to Emiljanowicz for placement on his freightliner. The decals indicate the authority to operate the freightliner pursuant to Department of Transportation regulations and contain identification numbers. Sandrzyk stated that it is the responsibility of the drivers to place the decals on their vehicles.

¶ 8    Later that same day, Emiljanowicz drove the truck to pick up a friend and take the truck to a mechanic. In his deposition, Emiljanowicz stated that the truck did not have problems but he needed to "[c]heck everything out" because he was "start[ing] a new job." He purchased the freightliner so he could go into business as an independent operator. Emiljanowicz stated that he had called his friend earlier and asked him "to come with [him] so [he] can drop it off to [the] mechanic." Around 1:45 p.m. on May 12, 2004, on his way to pick up his friend, Emiljanowicz collided with a vehicle driven by defendant Barbara Karawacki-Horowitz.

¶ 9    Officer Kenneth King responded to the call of an accident. In his deposition, Officer King acknowledged that his report did not contain information identifying Emiljanowicz's vehicle as a commercial carrier. He stated that he could not recall whether the truck had decals or placards identifying it as a commercial carrier, but if the truck had such information Officer King would have indicated so in his report. Officer King further stated that Emiljanowicz never told him that he was working for SSTS at the time of the accident. Officer King obtained insurance information from Emiljanowicz.

¶ 10   At the time of the accident, Emiljanowicz was covered by an insurance policy issued by Progressive. The Progressive policy contains the following "Contingent Liability Endorsement":

"We agree with you that the provisions of the Policy relating to insurance for **Personal Injury Protection, Bodily Injury Liability,** and **Property Damage Liability** are subject to the following limitations:

1. These coverages apply only to an **insured** named in the Policy declarations.

2. These coverages do not apply at any time when an **insured** under this endorsement is operating, maintaining, or using the **insured auto** or any other **auto** for or on behalf of anyone else or any organization whether or not the **insured** is being compensated for such use.

3. These coverages do not apply when an **insured** under this endorsement is acting as an agent or employee of anyone else or any organization."

¶ 11     Occidental issued a liability insurance policy to SSTS for coverage of all vehicles in service for SSTS, whether owned or leased by SSTS. The policy provides coverage for "all sums an 'insured' must legally pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." The policy also contains the following:

"1. **Who Is An Insured**

The following are 'insureds':

a. You for any covered 'auto'.

* * *

d. The owner or anyone else from whom you hire or borrow a covered 'auto' that is not a 'trailer' while the covered 'auto':

(1) Is being used exclusively in your business as a 'trucker'; and

(2) Is being used pursuant to operating rights granted to you by a public authority."

The policy defines "trucker" as "any person or organization engaged in the business of transporting property by 'auto' for hire."

¶ 12     Within the Occidental policy is a "SCHEDULE OF COVERED AUTOS YOU OWN" in which SSTS listed both its owned and nonowned vehicles. The policy also contains a provision detailing liability coverage for owned vehicles acquired by SSTS after the effective date of the policy:

"B. Owned Autos You Acquire After The Policy Begins

1. If Symbols 41, 42, 43, 44 or 45 are entered next to a coverage in Item Two of the Declarations, then you have coverage for 'autos' that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 46 is entered next to a coverage in Item Two of the Declarations, an 'auto' you acquire will be a covered 'auto' for that coverage only if:

a. We already cover all 'autos' that you own for that coverage or it replaces an 'auto' you previously owned that had that coverage; and

b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage."

¶ 13     Symbol 46 refers to the "autos" specifically described in the "SCHEDULE OF COVERED AUTOS YOU OWN." Symbol 47 applies to "those 'autos' you lease, hire, rent or borrow." Both parties agree that Emiljanowicz's freightliner falls within the definition of symbol 47. As is apparent from the above provision, Occidental's policy does not specify coverage for leased vehicles obtained after the policy begins. SSTS, however, did add Emiljanowicz's freightliner to the list of specifically described nonowned vehicles on June 8, 2004.

¶ 14     Ms. Karawacki-Horowitz filed a bodily injury claim against Emiljanowicz to recover

-4-

damages as a result of the accident. Her husband, David Horowitz, filed a claim for loss of consortium. Progressive defended the claims under a reservation of rights, and the claims were subsequently dismissed pursuant to a settlement in the amount of $400,000. Progressive filed a declaratory judgment action seeking a declaration of coverage under the Occidental policy in lieu of the Progressive policy. It sought reimbursement for the defense and settlement of the Horowitz claims. Occidental filed a counterclaim alleging no coverage was provided under its policy, as well as other defenses.

¶ 15    Progressive filed a motion for summary judgment and Occidental filed a response and a cross-motion for summary judgment. On April 15, 2011, the trial court granted Progressive's motion and denied Occidental's motion, ruling that the underlying action triggered Occidental's duty to defend. The court ruled that Emiljanowicz and his freightliner were covered by Occidental's policy and "[i]t is undisputed that at the time of the accident Emiljanowicz was in the process of taking his tractor to a mechanic to get his tractor examined." The trial court reserved the question of the application of the "other insurance" provisions of the policies pending further briefing on the application of Progressive's policy. Progressive then filed a supplemental motion for summary judgment, and Occidental filed a response. The trial court granted Progressive's motion on August 11, 2011, and on November 14, 2011, it entered judgment in favor of Progressive and against Occidental. Occidental filed this timely appeal.

¶ 16                                        ANALYSIS

¶ 17    On appeal, Occidental contends the trial court erred in granting Progressive's motion for summary judgment, finding that Occidental's policy provided coverage for the underlying Horowitz claims, and denying Occidental's cross-motion for summary judgment. "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002). If parties file cross-motions for summary judgment, they acknowledge that no material questions of fact exist and the only issue is one of law regarding the construction of an insurance policy. *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009). We review the trial court's determinations on motions for summary judgment *de novo*. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007).

¶ 18    In order for Occidental's policy to apply here, we must find that Emiljanowicz is an insured under the policy and that his freightliner is a covered "auto." According to the terms of Occidental's policy, Emiljanowicz qualifies as an insured if his vehicle is being used exclusively in SSTS's business of "transporting property by 'auto' for hire." Occidental contends Emiljanowicz is not an insured under the policy because he was driving his vehicle to pick up a friend and was not engaged in the business of transporting property on behalf of SSTS at the time of the accident. Occidental's arguments on this issue, in both its main brief and its reply brief, make no supporting citations to authority. Occidental's argument without support violates Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008), which

provides that arguments "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Therefore, it has waived this argument on review. However, even on the merits we are not persuaded by Occidental's contentions.

¶ 19    The undisputed facts show that SSTS is a corporation in the business of transporting freight both interstate and intrastate. SSTS operates under a certificate of public convenience and necessity issued by the Interstate Commerce Commission, and possesses operating rights issued by the State of Illinois. Pursuant to a contractor operating agreement, SSTS leased Emiljanowicz's freightliner for transporting property. The agreement granted SSTS "exclusive possession, Control and use of" the freightliner for its business. Emiljanowicz agreed to transport only freight from SSTS. The agreement also provided that the "[c]ontractor shall follow the directions of [SSTS] exclusively in the performance of its duties under this Agreement." Furthermore, it was SSTS's policy to direct contractors to have their equipment inspected and serviced by a mechanic before beginning work with the company. SSTS gave Emiljanowicz identification decals to place on his vehicle.

¶ 20    After the parties signed the agreement, Chris Sandrzyk instructed Emiljanowicz to have his vehicle inspected by a mechanic. Emiljanowicz stated that the truck did not have problems but he needed to "[c]heck everything out" because he was "start[ing] a new job." Emiljanowicz wanted to take a friend along so that he could drop off the truck with the mechanic. On his way to pick up his friend, Emiljanowicz was involved in the collision that resulted in the underlying Horowitz claims.

¶ 21    Where the contractor agreement provides that the insured corporation has exclusive possession, control and use of a leased vehicle, and at the time of the accident the vehicle was operating on directions from the corporation, the vehicle is being used in the business of the corporation. *Occidental Fire & Casualty Co. of North Carolina v. Padgett*, 113 Ill. App. 3d 215, 219-20 (1983). Therefore, Emiljanowicz was engaged in the business of SSTS at the time of the accident.

¶ 22    Occidental, however, argues that Emiljanowicz was not engaged in the business of SSTS because his vehicle did not have a trailer attached and did not display placards or decals identifying it as under lease by SSTS. Occidental also argues that its policy does not cover Emiljanowicz because he was not employed by SSTS at the time of the accident to transport property but, rather, was on his way to pick up a friend. As discussed above, Occidental provides no cases in support of its arguments. Nevertheless, as long as the hiring corporation had exclusive possession and control of the vehicle, and the vehicle was being operated on directions from the corporation, it is engaged in the business of the corporation even if it was not in the process of transporting property and did not have a trailer attached. See *Occidental*, 113 Ill. App. 3d at 220 (covered accident occurred after corporation told driver to leave his trailer and go home because another load would not be ready for transport until the following day). See also *St. Paul Fire & Marine Insurance Co. v. Frankart*, 69 Ill. 2d 209 (1977) (accident that occurred when the driver was returning home pulling an empty trailer on directions of company was in the course of the company's business).

¶ 23    The undisputed testimony also reveals that Emiljanowicz was given the decals after he

signed the agreement with SSTS and he possessed the decals at the time of the accident. Sandrzyk stated that it is the responsibility of the contractor to display the decals on the vehicle. Occidental provides no cases in support of its argument that the failure to display the decals precludes a finding that Emiljanowicz was operating his freightliner in the business of SSTS at the time of the accident. In fact, the decals are part of an Interstate Commerce Commission regulatory scheme that, although informative, is not controlling on this issue. *Occidental*, 113 Ill. App. 3d at 220.

¶ 24 The determinative factor remains whether SSTS had exclusive possession, control, responsibility and use of the freightliner at the time of the accident. The parties signed the agreement at 10 a.m. on May 12, 2004. At that time, Chris Sandryzk instructed Emiljanowicz to get his freightliner inspected and serviced by a mechanic pursuant to SSTS policy. Approximately three hours later, Emiljanowicz was on his way to pick up a friend so that he could drop off his vehicle with the mechanic and complete the inspection demanded by SSTS. The accident occurred as Emiljanowicz drove to get his friend. In his deposition, Emiljanowicz explicitly stated that he had called his friend earlier and asked him "to come with [him] so [he] can drop it off to [the] mechanic." Emiljanowicz provided no other reason for driving the freightliner to his friend's house, and no testimony contradicted him on this issue. We hold that under the terms of Occidental's policy, Emiljanowicz is a covered insured.[1]

¶ 25 Next we determine whether Emiljanowicz's freightliner was a covered "auto" at the time of the accident. The trial court found that the freightliner, as a specifically described auto within Occidental's policy, was covered by symbol 46 in the provision for autos acquired after the policy begins. Since the policy covers all such "autos" leased by SSTS, and SSTS added the freightliner on June 8, 2004, within 30 days of acquiring it by signing the contractor agreement with Emiljanowicz, the trial court determined that the freightliner was a covered "auto" under Occidental's policy. Occidental disagrees, arguing that the freightliner falls under symbol 47, not 46, and as such must be listed on the policy for coverage to apply. Occidental, however, provides no citations to support its argument.

¶ 26 It is true that Occidental's policy contains no specific provision for coverage of leased autos acquired after the policy begins. However, although Emiljanowicz's freightliner is a leased "auto" within the definition of symbol 47, Occidental's policy also lists the freightliner as a specifically described auto in the "SCHEDULE OF COVERED AUTOS YOU OWN" section of the declarations. It appears that SSTS listed all of its leased trucks as specifically described autos. Specifically described autos are designated by symbol 46 in the policy. Occidental's policy is ambiguous insofar as it does not specify whether leased vehicles listed as a specifically described auto can be designated by symbol 46 in determining

---

[1]The parties also discuss *Freed v. The Travelers*, 300 F.2d 395 (7th Cir. 1962), in which the driver of a leased vehicle had a collision after dropping off a load and while taking his vehicle to a garage for service and maintenance. The *Freed* court found that although the driver had a duty to maintain the truck, this duty did not effectively remove performance of maintenance from the sphere of the corporation's business activities. *Id*. at 398. Although informative, federal case law is not controlling here. *Prior Plumbing & Heating Co. v. Hagins*, 258 Ill. App. 3d 683, 688 (1994).

coverage for those acquired after the policy begins. Courts will construe such ambiguities against the insurer who drafted the policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). Therefore, we find that Emiljanowicz's freightliner falls within the definition of symbol 46 for determining coverage of autos acquired after the policy begins. The parties do not dispute that Occidental's policy covers all of the trucks SSTS leases to transport property. SSTS also added the freightliner within 30 days of signing the contractor agreement with Emiljanowicz. According to the terms of Occidental's policy, the freightliner is a covered "auto" under Occidental's policy.

¶ 27    Occidental also contends that the trial court erred in finding that Progressive's policy issued to Emiljanowicz did not apply and denying Occidental's motion for summary judgment. Generally, the denial of a summary judgment motion is not a final judgment and is therefore not appealable. *Chavda v. Wolak*, 188 Ill. 2d 394, 403 (1999). However, review of a denial for summary judgment is proper where the trial court's order also granted a cross-motion for summary judgment on the same claim. *Id.*

¶ 28    At issue is the following contingent liability endorsement provision contained in Progressive's policy:

> "2. These coverages do not apply at any time when an **insured** under this endorsement is operating, maintaining, or using the **insured auto** or any other **auto** for or on behalf of anyone else or any organization whether or not the **insured** is being compensated for such use."

¶ 29    Occidental argues that this provision does not apply here because "[a]lthough Progressive argued below that Emiljanowicz was in the process of taking his truck to a mechanic to have it checked out to make sure it was in proper operating condition so he could start his job with SSTS, another equally likely inference is that Emiljanowicz was picking up a friend and, in addition, was going to a mechanic to make sure the truck, which he just purchased, was operating properly in order that he could use it for any reason." Occidental concludes that a genuine issue of material fact exists precluding the grant of summary judgment in favor of Progressive. However, Progressive filed a motion for summary judgment and Occidental filed a cross-motion for summary judgment. In filing cross-motions for summary judgment, the parties acknowledge that no material questions of fact exist and the only issue is one of law regarding the construction of an insurance policy. *American Family Mutual Insurance Co.*, 391 Ill. App. 3d at 525.

¶ 30    Nevertheless, the evidence in the record does not support Occidental's claim. As discussed above, it was SSTS policy to require its contractors to have their equipment inspected and serviced by a mechanic before transporting freight for the company. Chris Sandrzyk, after signing the agreement on behalf of SSTS, told Emiljanowicz to have his freightliner inspected by a mechanic. In his deposition, Emiljanowicz stated that he had called a friend earlier and asked him "to come with [him] so [he] can drop it off to [the] mechanic." This undisputed testimony shows that Emiljanowicz went to pick up his friend so that he could drop off his freightliner at the mechanic for the inspection ordered by SSTS. When the accident occurred, a mere three hours after he signed the contractor agreement and received SSTS's identifying decals, Emiljanowicz was in the process of taking his vehicle

to the mechanic. Therefore, Emiljanowicz was operating or maintaining his freightliner on behalf of SSTS at the time of the accident and Progressive's contingent liability endorsement applies to exclude coverage. See *Occidental*, 113 Ill. App. 3d at 219-20. The trial court did not err in granting summary judgment in favor of Progressive and denying Occidental's cross-motion for summary judgment.

¶ 31 Occidental also argues that Progressive's policy should apply because "in Illinois the general rule is that the insurance follows the car." It cites to *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240 (1998). *State Farm*, however, involves a test driver at a dealership who got into an accident while test driving the dealer's car. *State Farm* is not applicable here.

¶ 32 Since we find that Progressive's policy does not apply, we need not consider Occidental's remaining contention that Progressive's policy is primary and Occidental's policy is excess pursuant to their "other policies" provisions.

¶ 33 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 34 Affirmed.