# Illinois Official Reports

## Appellate Court

> ### *Schuster v. Occidental Fire & Casualty Co. of North America*,
> ### 2015 IL App (1st) 140718

| | |
|---|---|
| Appellate Court Caption | IRINA SCHUSTER, as Special Administrator of the Estate of Oleh Baranovsky, Deceased, Plaintiff-Appellant, v. OCCIDENTAL FIRE AND CASUALTY COMPANY OF NORTH AMERICA, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-0718 |
| Filed | March 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-14105; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael W. Rathsack, Alexander Gruzmark, and Andrew J. Long, all of Chicago, for appellant.<br><br>Wendy N. Enerson, of Cozen O'Connor, of Chicago, for appellee. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion.


**OPINION**

¶ 1     The plaintiff, Irina Schuster, as special administrator of the estate of Oleh Baranovsky, deceased, appeals from the entry of summary judgment for the defendant insurer, Occidental Fire & Casualty Company (Occidental),[1] in this insurance coverage action. The main dispute is whether the insurance policy covers both owned and leased vehicles. The trial court granted summary judgment to the insurer after finding that its commercial automobile liability policy covered owned vehicles, not the leased truck that was involved in Baranovsky's fatal accident, and that leasing the truck did not trigger an "automatic insurance provision" for newly acquired vehicles. The court also rejected the plaintiff's contention that the insurer was estopped from raising policy defenses. On appeal, the plaintiff contends the findings were contrary to precedent and the facts. For the reasons below, we disagree with the estate and we affirm the court's ruling.

¶ 2     Baranovsky's accident occurred on September 8, 2005, at 12:50 p.m. when the 23-year-old Chicagoan was driving a 1997 Isuzu freight truck in Tennessee. He was southbound on Interstate 65, near mile marker 100 and the exit ramp for the community of Millersville. There, the highway curves to the east, but the freight truck crossed west over the highway median, overturned onto the driver's side, and slid into the northbound traffic lanes, where it struck a Toyota Corolla and caused the car to roll several times. The 31-year-old oil refinery worker who was driving the Toyota was only bruised and was released from the emergency room that same day. Baranovsky's injuries were more severe. He was flown from the accident scene and died in the hospital a week later.

¶ 3     In 2007, Baranovsky's estate brought an action for damages against two interstate trucking companies based in Illinois, Diamond Transportation, Inc. (Diamond), and DA Fast Express, Inc. (DA Fast); and the president of DA Fast, Dariusz Benesiewicz. The negligence allegations against Diamond are pertinent here. The estate alternatively alleged that Diamond failed to provide worker's compensation coverage to its employee driver or to properly maintain its truck. More specifically, at the time of the accident, Baranovsky was alleged to be "an employee and/or agent of, and driver for Defendant [Diamond]" who was "acting within the scope of said employment and/or agency [with Diamond]" and "operating a [1997 Isuzu] vehicle owned and/or leased by Defendant [Diamond]." Diamond was alleged to owe "the duty to exercise due care at all times to avoid placing its employees and/or agents in danger," but in breach of that duty it had required its employee and/or agent to "drive unreasonably extended hours in excess of his ordinary physical limitations" or it failed to inspect, maintain,

---

[1]It is unclear why the insurer has been referred to alternatively as Occidental Fire & Casualty Company, Occidental Fire & Casualty Company of North America, and Occidental Fire & Casualty Company of North Carolina. We use the version that appears on the printed policy.

or repair its vehicle. The estate has abandoned the allegations regarding worker's compensation insurance and focuses its appeal on the allegations of common law negligence.

¶ 4    When Diamond received the negligence complaint, it requested claim coverage from Occidental under the "Truckers Coverage" commercial automobile policy that Diamond had purchased from Occidental for the one-year period beginning September 23, 2004. Diamond's policy provided up to $1 million liability coverage and obligated Occidental to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered auto."

¶ 5    The policy's section I, "Item Three–Schedule of Covered Autos You Own," contains a list of 14 insured trucks and cars, identified by their unique vehicle identification numbers, and their model year, trade name, and body type (*e.g.*, "straight truck" or "van"). The Isuzu truck that Baranovsky was driving does not appear on this original policy schedule. However, a commercial policy change request form in the record on appeal shows that Diamond asked for the Isuzu truck to be added to its Occidental policy *after* the accident occurred based on a lease that was dated one day before the accident occurred. Diamond's insurance agent faxed the request to Occidental's agent on September 8, 2005, at 4:28 p.m. and the written lease dated September 7, 2005, indicated DA Fast was leasing the Isuzu to Diamond for a year. We emphasize that it is undisputed that DA Fast owned the Isuzu truck when the accident occurred and that Diamond has never owned that vehicle.

¶ 6    Diamond's " 'covered autos' " were defined by symbol 46 in a chart of coverage numbers that was included in section I of the policy. Coverage symbol 46 is labeled, "Specifically Described 'Autos,' " and defined as "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown." Diamond contracted only for coverage symbol 46 and did not contract for other coverage symbols. For instance, Diamond did not contract for coverage symbol 41, which is labeled "Any 'Autos' "; or for coverage symbol 47, which is labeled, "Hired 'Autos' Only," and defined as "Only those 'autos' you lease, hire, rent or borrow."

¶ 7    Section I of the policy also contains what the parties refer to as the "automatic insurance provision." It states:

> "B. Owned Autos You Acquire After the Policy Begins
>
> 1. If Symbols 41, 42, 43, 44 or 45 are entered next to the coverage in Item Two of the Declarations, then you have coverage for 'autos' that you acquire of the type described for the remainder of the policy period.
>
> 2. But, if Symbol 46 is entered next to a coverage in Item Two of the Declarations, an 'auto' you acquire will be a covered 'auto' for that coverage only if:
>
> > a. We already cover all 'autos' that you own for that coverage or it replaces an 'auto' you previously owned that had that coverage; and
> >
> > b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage."

¶ 8    Section II of the policy contains exclusions for employee injuries:

> "B. Exclusions
>
> This insurance does not apply to any of the following:

3. Workers' Compensation

Any obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers compensation, disability benefits or unemployment compensation, disability benefits or unemployment compensation law or any similar law.

4. [Bodily injury to an employee of the insured arising out of and in the course of employment. This exclusion applies whether the insured may be liable as an employer or in any other capacity.]"

¶ 9 When Diamond requested claim coverage under this policy, Occidental responded that based on the facts alleged in the estate's complaint, there was no coverage. Occidental quoted the policy's express exclusions for workers' compensation liability and bodily injuries to employees and then generally stated, "By naming the specific grounds for this disclaimer of coverage, we do not waive any of our rights or any of the other provisions or conditions of the policy of insurance and specifically reserve all of our rights and remedies under this policy and under the statutes and common law."

¶ 10 Diamond then answered the complaint but did not otherwise defend against the estate's allegations. A default judgment was entered against Diamond and the estate proved up damages totaling $4.4 million. Shortly after that, Diamond and the estate agreed that the estate would settle for an assignment of Diamond's insurance rights and the estate, as assignee, commenced this declaratory judgment action against Occidental.

¶ 11 Discovery ensued in the coverage case and indicated that DA Fast, an Illinois company, contracted to haul freight exclusively for Diamond, that Diamond was DA Fast's sole source of income, and that the relationship began in 1998 and continued for about a year after Baranovsky's accident. Benesiewicz (the president of DA Fast) testified that he bought the 1997 Isuzu truck at issue in April 2005. DA Fast's drivers' manifest logs showed that Benesiewicz drove the 1997 Isuzu as early as August 4, 2005. Another log sheet showed that Baranovsky drove the truck as early as August 5, 2005, which is when he first began driving for DA Fast, ostensibly as an independent contractor. The logs showed that the only truck Baranovsky drove for DA Fast during his six weeks with DA Fast was the 1997 Isuzu. Benesiewicz testified that he insured the Isuzu through Great West Casualty Company and that the policy was in effect when the accident occurred.

¶ 12 On cross-motions for summary judgment, the trial court found there was a question of fact as to whether Baranovsky was Diamond's employee, but that regardless of his employment status, Occidental was entitled to summary judgment. As we summarized earlier, the court found that summary judgment was warranted because the Occidental policy covered only vehicles that were owned by Diamond, the policy did not cover the leased truck that Baranovsky was driving, and the lease of the truck from DA Fast to Diamond did not trigger an "automatic insurance provision" for newly acquired vehicles. The court rejected the estate's contention that Diamond's insurer was estopped from raising defenses to coverage.

¶ 13 The estate now argues the summary judgment ruling should be reversed because Diamond timely fulfilled the requirements for automatic coverage of the newly acquired Isuzu when it submitted the change request form on September 8, within 30 days of Diamond's lease of the vehicle from DA Fast on September 7. The estate contends this sort of automatic insurance

clause is commonly used to prevent a gap in coverage between the time an insured acquires a vehicle and is able to complete the paperwork necessary to expressly add the vehicle to its policy. The estate cites *Smith* for the proposition that the Occidental clause provided interim coverage even though Diamond notified the insurer *after* the vehicle was involved in an accident. *American Freedom Insurance Co. v. Smith*, 347 Ill. App. 3d 1, 6-7, 806 N.E.2d 1136, 1140 (2004). Continuing, the estate argues that the court's conclusion that the clause applied only to owned vehicles is contrary to *Emiljanowicz*, which involved a freight truck that was leased to a trucking company and an insurance clause that was similar, if not identical, to the clause at issue here. *Progressive Premier Insurance Co. of Illinois v. Emiljanowicz*, 2013 IL App (1st) 113664, 991 N.E.2d 352.

¶ 14    Occidental responds that the trial court's ruling was well reasoned and should be affirmed. Occidental contends that adding the Isuzu to the policy after the accident was ineffective and that according to *Mank*, unless the vehicle appeared on the policy's "Schedule of Covered Autos" on the day of the accident, it was not covered on the day of the accident. *Mank v. West American Insurance Co.*, 249 Ill. App. 3d 827, 620 N.E.2d 6 (1993). Occidental also contends that the reason there was coverage for a leased truck in *Emiljanowicz* was because the insured purchased coverage for all of its leased (and owned) vehicles, unlike Diamond, which purchased coverage only for its owned vehicles.

¶ 15    On appeal we consider the allegations of the underlying complaint and construe the Occidental insurance contract in order to determine whether summary judgment was proper. The interpretation of an insurance contract and the entry of summary judgment present questions of law that are reviewed *de novo* without any deference to the trial court's determinations. *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 241, 668 N.E.2d 59, 62 (1996).

¶ 16    The entry of summary judgment is a drastic but expeditious means of disposing of a lawsuit in which the right of the moving party is free from doubt and clear. *Outboard Marine*, 154 Ill. 2d at 102, 607 N.E.2d at 1209. Summary judgment is to be granted "without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005 (West 2010); *Outboard Marine*, 154 Ill. 2d at 102, 607 N.E.2d at 1209. In other words, at the summary judgment stage, the court does not decide disputed issues of fact, but does decide whether they exist and that the matter should instead proceed to trial. A court is cautious in awarding summary judgment in order to avoid preempting a litigant's right to a trial in which the litigant may fully present the factual basis of his or her case. *Lamkin v. Towner*, 246 Ill. App. 3d 201, 204, 615 N.E.2d 1208, 1210 (1993); *Outboard Marine*, 154 Ill. 2d at 102, 607 N.E.2d at 1209 (summary judgment is to be denied where there are undisputed facts from which reasonable persons could draw divergent inferences). A genuine issue of material fact is said to exist when the evidence is sufficient to cause a reasonable jury to return a verdict for the party opposing the entry of summary judgment. *McDonald v. Northeast Illinois Regional*, 249 F. Supp. 2d 1051, 1053 (N.D. Ill. 2003).

¶ 17    A plain and unambiguous insurance policy is applied as written. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073 (1993). A court will not search for ambiguity where none exists. *Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. However, a policy that is susceptible to more than one reasonable

- 5 -

interpretation is ambiguous and subject to rules of interpretation, such as the rule that ambiguities are construed against the drafter of the policy and in favor of coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119, 607 N.E.2d 1204, 1217 (1992). Accordingly, a court must initially look to the language of the policy alone. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58 (2007). A single, isolated clause or provision in a contract is not indicative of the parties' intent at the time of contracting. *Gallagher*, 226 Ill. 2d at 233, 874 N.E.2d at 58. "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher*, 226 Ill. 2d at 233, 874 N.E.2d at 58.

¶ 18   We consider the fact that the Isuzu was leased and not owned by Diamond to be dispositive of this appeal. When the contract is read as a whole, it is clear that the only vehicles that were covered by this liability policy were vehicles that Diamond owned. According to the contract, the only type of coverage that Diamond purchased was symbol 46 coverage, symbol 46 coverage is for "Specifically Described Autos" which are "described on Item Three of the Declarations," and "Item Three of the Declarations" is entitled "Schedule of Covered Autos You Own."

¶ 19   The estate is unable to point to any language in this plain and unambiguous contract which arguably extends policy coverage to leased vehicles. Instead of contract language or other competent facts, the estate cites "circumstantial evidence" that this policy encompassed leased trucks. The estate contends:

> "[T]he policy on first glance might appear to cover only owned trucks because the insured trucks are listed under Item Three[, which is entitled] Schedule of Covered Autos *You Own*. However, a witness testified that Diamond leased its trucks rather than owning them. [This testimony was corroborated by] the fact that Item Three has a line for the original cost of the truck but not one of those lines is filled in. There was presumably no cost listed because Diamond never bought them." (Emphasis in original.)

¶ 20   The witness testimony that the estate is relying upon is a statement that the president of DA Fast made during his deposition to the effect that Diamond did not own trucks but rather leased trucks to haul its freight. Benesiewicz's opinion or misstatement about the details of someone else's company is not competent evidence. His unsupported assumption or misstatement about Diamond's business operations or assets is not a statement of fact that could be considered at the summary judgment stage. Witness testimony properly considered by a court in a summary judgment proceeding is testimony that meets the same standard as an affidavit and consists of a statement or statements of fact, not mere conclusions, opinions, or belief not based on personal knowledge of facts. *Patterson v. Stern*, 88 Ill. App. 2d 399, 404, 232 N.E.2d 7, 9 (1967); *Davis v. Times Mirror Magazines, Inc.*, 297 Ill. App. 3d 488, 495-96, 697 N.E.2d 380, 386 (1998) (rejecting appeal from summary judgment ruling in part because the plaintiff's "purported evidence of retaliatory discharge was based on unsupported assertions, opinions, and conclusory statements that he made in his deposition testimony" and statements of this nature "are not admissible evidence upon review of a summary judgment motion" (internal quotation marks omitted)); *Seefeldt v. Millikin National Bank of Decatur*, 154 Ill. App. 3d 715, 718, 506 N.E.2d 1052, 1055 (1987) (indicating that when determining whether a genuine issue of material fact exists in a summary judgment proceeding, "a court should ignore personal conclusions, opinions, and self-serving statements and consider only facts admissible in

evidence under the rules of evidence"); *Harris Bank Hinsdale, N.A. v. Caliendo*, 235 Ill. App. 3d 1013, 1025, 601 N.E.2d 1330, 1138 (1992) (evidence that would be inadmissible at trial is not to be considered in a summary judgment proceeding). Put another way, if this case went to trial, the president of DA Fast would not be permitted to opine from the witness stand about Diamond's assets or business operations and so the estate's citation to the deposition transcript does not raise a question of material fact to defeat Occidental's motion for summary judgment. Moreover, although we granted the estate's motion to cite additional authority in support of its appeal, the case the estate relies upon, *Hajicek*, does not persuade us to give serious consideration to Benesiewicz's deposition testimony that Diamond leased rather than owned vehicles. *Hajicek v. Nauvoo Restoration, Inc.*, 2014 IL App (3d) 121013, ¶ 13, 7 N.E.3d 911. The case is properly cited for the well-established proposition that an appellee may not effectively raise an evidentiary objection for the first time on appeal. The case does not indicate that speculation, opinion, unfounded conclusion or mere assumption should be treated as competent evidence to defeat a motion for summary judgment.

¶ 21    Furthermore, the estate's proposed presumption as to why the purchase price of the covered vehicles was left blank on the Occidental policy page is not a reasonable inference. It is speculation which is not grounded in any fact. Even in combination, the assumption and the speculation are not enough to refute the definite indications in the contract that coverage was limited to vehicles which Diamond owned.

¶ 22    Nevertheless, presuming, for the purposes of argument, that Occidental or Diamond intentionally put leased vehicles on the policy's "Schedule of Covered Autos You Own," we would still conclude there is no coverage for the leased Isuzu. This is because the automatic insurance provision which the estate is relying upon provides coverage only to "*Owned* Autos You Acquire After the Policy Begins" and specifies that coverage is extended to after-acquired vehicles "only if" Occidental "already cover[s] all 'autos' that [Diamond] *own[s]* for that coverage or it [the newly acquired vehicle] replaces an 'auto' you previously *owned* that had that coverage." (Emphases added.) We cannot reasonably construe this clear policy language about vehicles which are owned to encompass vehicles which are leased.

¶ 23    The record on appeal establishes that Diamond leased the Isuzu from DA Fast instead of purchasing it from DA Fast. Thus, the policy did not cover the vehicle that Baranovsky was driving when he had his unfortunate accident.

¶ 24    We are not dissuaded from this conclusion by the estate's citation to *Emiljanowicz*, which was an insurance coverage action concerning a leased freight truck that was involved in an accident before the driver hauled his first load for the trucking company. *Emiljanowicz*, 2013 IL App (1st) 113664, ¶ 8, 991 N.E.2d 352. That case is not on point. Specifically there, the trucking company paid Occidental to insure all of its vehicles, whether they were leased or owned. *Emiljanowicz*, 2013 IL App (1st) 113664, ¶ 11, 991 N.E.2d 352. The policy included the same automatic insurance coverage that is at issue here and the court found that under the facts presented, the Occidental policy was ambiguous as to whether there was automatic coverage for the leased freight truck. *Emiljanowicz*, 2013 IL App (1st) 113664, ¶ 26, 991 N.E.2d 352. The court then applied the principle that ambiguities are construed against the insurer and found that the newly leased freight truck was covered under the Occidental policy. *Emiljanowicz*, 2013 IL App (1st) 113664, ¶ 26, 991 N.E.2d 352. However, in the current case, there is no competent evidence that Diamond contracted with Occidental to cover any leased

vehicles and, thus, no ambiguity as to whether there was coverage of the leased Isuzu. Accordingly, *Emiljanowicz*'s reasoning is not relevant here.

¶ 25    Based on this analysis, we conclude that the clear and unambiguous contract did not provide coverage for the leased Isuzu.

¶ 26    Given our conclusion that coverage was limited to owned vehicles, we do not need to resolve the parties' dispute as to whether adding the leased Isuzu to the policy after the accident provided coverage on the day of the accident.

¶ 27    It is also unnecessary for us to reach Occidental's alternative argument that insurance coverage is provided only for risks and that because Diamond already knew or had reason to know of the Isuzu accident and the likelihood of claims when it sought to add the Isuzu to the Occidental policy, then the known-loss doctrine bars coverage for the Isuzu accident. See *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 358 Ill. App. 3d 34, 42, 831 N.E.2d 1, 7 (2005) (indicating that implicit in every liability contract is the requirement that the loss be a fortuitous loss); *Outboard Marine*, 154 Ill. 2d at 103, 607 N.E.2d at 1210 (indicating that insurance is for a risk not a certainty and that the known-loss doctrine relieves an insurer of the duty to defend or indemnify).

¶ 28    This brings us to the estate's second main contention on appeal: estoppel. The estate contends that the insurer had no right to unilaterally declare there was no coverage (on grounds that the policy expressly excludes coverage for employee injuries) and that the insurer was obligated to either defend Diamond under a reservation of rights or to file a declaratory judgment so that a court could determine the insurer's responsibilities. The estate is relying on the equitable principle that "an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 151, 708 N.E.2d 1122, 1135 (1999); *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 479, 430 N.E.2d 1104, 1109 (1981) (indicating the estoppel doctrine is a rule of equity).

¶ 29    If the insurer owes and breaches a duty to defend, the estoppel doctrine bars the insurer from later enforcing another clause of the contract that contains a defense to coverage, even if that defense would have been successful. *Ehlco*, 186 Ill. 2d at 151-52, 708 N.E.2d at 1135; *Clemmons*, 88 Ill. 2d at 479, 430 N.E.2d at 1109. Thus, in appropriate circumstances, the equitable principle of estoppel will be used to preclude an insurer from relying on a condition in which the insured has forfeited coverage, such as by filing a false statement, vacating a building after the issuance of a fire policy, and failing to obtain the insurer's consent before settling a case. *Richardson v. Guardian Life Insurance Co. of America*, 984 P.2d 917, 924 (Or. Ct. App. 1999). In other words, the insured may use estoppel as a defense in order to preserve contractual rights to coverage. *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill. App. 3d 528, 533, 673 N.E.2d 1099, 1103 (1996). Estoppel, however, generally cannot be used to create coverage where none otherwise exists. *Filos*, 285 Ill. App. 3d at 534, 673 N.E.2d at 1103 ("Illinois courts have followed the general rule that the doctrine of estoppel cannot be used to create primary liability or to increase coverage provided under an insurance policy."); *ABCD…VISION, Inc. v. Fireman's Fund Insurance Cos.*, 744 P.2d 998, 1000 (Or. 1987) (estoppel cannot expand coverage beyond the limits of the original policy); *Schaffer v. Mill Owners Mutual Insurance Co.*, 407 P.2d 614, 617 (Or. 1965) (estoppel or waiver is not a basis for creating a contract for coverage where no such contract previously existed); *Alan Corp. v. International Surplus Lines Insurance Co.*, 22 F.3d 339, 343 (1st Cir. 1994) ("As a general

matter, estoppel, like waiver, does not extend, broaden or enlarge coverage so as to include risks not covered within the terms of the policy."). Estoppel is not used to create coverage for a risk the insurer did not agree to cover and the insurer should not be made to pay for a loss for which it did not collect a premium. *Filos*, 285 Ill. App. 3d at 534, 673 N.E.2d at 1103.

¶ 30 A court will not enforce the insurer's protections under the policy where the insurer failed to act equitably toward its insured, that is, the insurer did not take one of two options: (1) to defend the suit under a reservation of rights or (2) to seek a declaratory judgment that there is no coverage under the policy. *Clemmons*, 88 Ill. 2d at 479, 430 N.E.2d at 1109; *Ehlco*, 186 Ill. 2d at 150-51, 708 N.E.2d at 1134-35. If the insurer fails to take either step and is later found to have wrongfully denied coverage, then the estoppel doctrine may be applied. *Ehlco*, 186 Ill. 2d at 150-51, 708 N.E.2d at 1135.

¶ 31 The estoppel doctrine was not triggered in this case. The trial court concluded there was no coverage under the Occidental policy and we agree with that conclusion. The policy clearly covered only owned automobiles and it was undisputed that the Isuzu was leased and not owned by Diamond. Therefore, Occidental's denial was proper and is not grounds for invoking the estoppel doctrine.

¶ 32 Finally, the estate argues that Occidental is estopped from denying coverage because its claim denial letter did not refer to the known loss doctrine which Occidental has argued in the trial and appellate courts. Occidental responds that this argument is incorrect, but in any event, we should not address it because the estate is presenting it for the first time on appeal and issues not raised in the circuit court cannot be argued for the first time on appeal. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 344, 775 N.E.2d 987, 998-99 (2002). The estate contends that it made this estoppel argument in one sentence in its 12-page cross-motion for summary judgment. Having read the motion, however, we disagree with the estate. We find that the argument is being made for the first time on appeal and has been waived. Waiver aside, it is irrelevant whether the claim denial letter cited the known-loss doctrine, because this doctrine did not enter into the trial judge's ruling or this court's analysis and the claim was properly rejected on other grounds. In any event, this policy did not cover leased vehicles and estoppel is not a basis for creating coverage for which Diamond neither contracted nor paid a premium.

¶ 33 We conclude that the trial court's findings were correct and that summary judgment was properly entered. Therefore, we affirm the judgment order from which the estate appealed.

¶ 34 Affirmed.